United States Court of Appeals,

Fifth Circuit.

No. 97-60247

Summary Calendar.

Israel VELASQUEZ-TABIR, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nov. 7, 1997.

Petition for Review of an Order of the Board of Immigration Appeals.

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Petitioner Israel Velasquez-Tabir was found guilty of using or possessing falsified documents to satisfy the requirements of the Immigration and Naturalization Act (INA).[1] He petitions this court for review of the order of the Administrative Law Judge (ALJ).[2] Discerning no reversible error by the ALJ, we deny the petition for review.

I

FACTS AND PROCEEDINGS

Velasquez-Tabir is a native of Mexico who entered this country without inspection in 1987. In 1991, he presented to his employer,

---

[1]8 U.S.C. § 1324c(a)(2).

[2]Velasquez-Tabir is able to seek review from this court of the final order under 8 U.S.C. § 1324c(d)(5). The ALJ order became the final agency decision and order when it went unreviewed by the agency and was not referred to the Attorney General. 8 U.S.C. § 1324c(d)(4).

1

Texas Arai, a social security card and an alien registration card (green card) with the alien number of another alien, Susana Wiskus Barrios. These documents were presented as evidence of Velasquez-Tabir's eligibility to work. Before beginning his employment, Velasquez-Tabir filled out and signed an I-9 form stating that he was an alien authorized to work in the United States. On the form he gave Wiskus Barrios' assigned alien number instead of his own.

After receiving a complaint, the Immigration and Naturalization Service (INS) conducted a survey and determined that 79 employees of Texas Arai had used falsified documents to comply with the INA. Velasquez-Tabir and 29 other employees were arrested at the same time for using or possessing falsified documents to satisfy the requirements of the immigration laws. The arrest occurred several days after the National Labor Relations Board (NLRB) certified the pro-unionization results of an election of Texas Arai's employees.

The INS issued a notice of intent to fine Velasquez-Tabir $750 and to order him to cease and desist from violating 8 U.S.C. § 1324c. After Velasquez-Tabir requested a hearing with an ALJ, the INS filed a complaint charging Velasquez-Tabir with use and possession of a falsified green card and seeking a fine of $250. Velasquez-Tabir responded, denying the allegations of the complaint and asserting an affirmative defense that his Fourth and Fifth Amendment rights were violated. He contended that the INS warrant for his arrest was illegally obtained by virtue of the employer's unlawful labor action of reporting employees to the INS in

2

retaliation for the employees' union organizing efforts.  He also insisted that any evidence recovered in the INS raid was illegally obtained.

On motion of the INS, the ALJ struck the affirmative defenses, concluding that Velasquez-Tabir's defense regarding the INS's use of illegally obtained evidence should be raised in a motion *in limine* to exclude the evidence.  The ALJ held that an employee does not have a privacy interest in the employer's premises.  Velasquez-Tabir amended his answer, re-asserting essentially the same affirmative defenses, which were again struck by the ALJ.[3]

Velasquez-Tabir then filed a motion *in limine* to exclude the evidence, reiterating the argument that the evidence was illegally obtained following his employer's unlawful labor practice and that the search violated his privacy interest in his employer's personnel files.  The ALJ denied the motion and, following the filing of a motion by the INS for a summary decision, rendered a final decision and order granting summary decision against Velasquez-Tabir.  In that decision, the ALJ found that the evidence (the social security card, green card, and records reflecting Velasquez-Tabir's true alien registration number and showing that the number he used belonged to another) was sufficient to support a finding of guilt for using or possessing a falsified document for the purpose of satisfying one of the requirements of the INA.  The ALJ noted that Velasquez-Tabir did not contest the authenticity,

_____

[3]Velasquez-Tabir also asserted that he was not properly notified of his rights because they were not in Spanish.  This too was struck by the ALJ and is not reurged by Velasquez-Tabir.

accuracy, or relevancy of the evidence.  He was ordered to pay the minimum civil penalty of $250.[4]  Velasquez-Tabir petitioned this court for review of the ALJ's final order and decision.[5]

## II

## ANALYSIS

The sole issue Velasquez-Tabir raises on appeal is that the evidence used by the INS was illegally obtained, given his employer's allegedly unlawful labor practice of reporting employees' violations of INA to the INS in retaliation for the employees' efforts to unionize the plant.[6]  He bases his argument on the Supreme Court's holding in *Sure-Tan, Inc. v. NLRB.*[7]

---

[4]8 U.S.C. § 1324c(d)(3)(A).

[5]The ALJ order was rendered on February 20, 1997.  Velasquez-Tabir filed his petition for review in this court on April 21, 1997.  Under § 1324c(d)(5), Velasquez-Tabir had "45 days after the date the final order was issued" to file his petition for review in this court.  While this court has not addressed when the 45 days begins, § 1324c(d)(4) states that an ALJ decision and order becomes final unless within 30 days the agency modifies or vacates the decision and order, or unless within 60 days the decision and order are referred to the Attorney General.  8 U.S.C. § 1324c(d)(4).  The ALJ indicated that the order would be considered the final order of the Attorney General unless the Chief Administrative Hearing Officer modified or vacated the order within 30 days.  R. 19.  The ALJ's order became final on March 18, 1997 (30 days from the date it was rendered), so Velasquez-Tabir's filing of his petition on April 21, 1997, was timely.  *Accord A-Plus Roofing, Inc. v. INS,* 929 F.2d 489, 489-90 (9th Cir.1991).

[6]Velasquez-Tabir does not argue on appeal, as he did before the ALJ, that the seizure of the evidence violated his Fourth Amendment privacy rights to his personnel records.  The INS correctly argues that this argument should be deemed waived for review. *Cf. DSC Communications Corp. v. Next Level Communications,* 107 F.3d 322, 326 n. 2 (5th Cir.1997).

[7]467 U.S. 883, 894-98, 104 S.Ct. 2803, 2809-12, 81 L.Ed.2d 732 (1984) (unfair labor practice exists with reporting an undocumented alien employee to INS in retaliation of the employee's protected

4

The INS responds that the evidence in question does not come within the limited exclusionary rules of evidence which apply to INS administrative proceedings. The INS also notes that there is no authority holding that labor protections afforded employees can be used to prohibit the INS from enforcing its rules.

Assuming arguendo that Texas Arai violated labor laws, the ALJ held that such action could not serve to exclude the evidence. The ALJ reasoned that (1) the INS was not Velasquez-Tabir's employer and did not violate the NLRA, and (2) violation of the NLRA would not invoke the exclusionary rule in an administrative proceeding.

We have not previously reviewed a decision from an ALJ with respect to 8 U.S.C. § 1324c. Neither have we considered whether evidence proffered in an INS administrative proceeding should be excluded when it was obtained as a result of a third-party employer's unlawful labor practices. We do so for the first time today.

Hearings conducted under § 1324c follow the requirements of the Administrative Procedure Act (APA).[8] Generally, the APA excludes only "irrelevant, immaterial, or unduly repetitious evidence."[9] Velasquez-Tabir does not argue that the evidence was irrelevant, immaterial, or unduly repetitious; rather he presents

---

labor activity).

[8] 5 U.S.C. § 554. *See* 8 U.S.C. § 1324c(d)(2)(B).

[9] 5 U.S.C. § 556(d); *see Calderon-Ontiveros v. INS,* 809 F.2d 1050, 1053 (5th Cir.1986). Review of a question of law is *de novo. Chemical Mfrs. Ass'n v. U.S.E.P.A.,* 870 F.2d 177, 198 (5th Cir.1989); *see* 5 U.S.C. § 706.

a question of law, to-wit, whether evidence obtained through his employer's unfair labor practice should have been used in his proceeding.

Neither Velasquez-Tabir nor the INS has referred us to authority addressing the question whether evidence obtained through a violation of a regulatory statute is excludable in an administrative proceeding conducted to assess a civil penalty under an unrelated statute, and we have found none independently. We therefore must plow new ground.

In the context of deportation proceedings, the Supreme Court in *INS v. Lopez-Mendoza* held that the exclusionary rule does not apply to exclude evidence obtained in violation of the Fourth Amendment.[10] The Court weighed "the likely social benefits of excluding unlawfully seized evidence against the likely costs."[11] The Court found that the benefit of excluding such evidence was deterrence.[12] The Court cited one of its earlier decisions, *United States v. Janis,* in which the Court found little deterrence value from excluding evidence in a federal civil tax assessment hearing, given that deterrence already existed with the evidence's exclusion in a state or federal criminal trial.[13] Moreover, the *Lopez-Mendoza*

---

[10]468 U.S. 1032, 1040-50, 104 S.Ct. 3479, 3484-89, 82 L.Ed.2d 778 (1984).

[11]*Id.* at 1041, 104 S.Ct. at 3484.

[12]*Id.*

[13]*Id.* at 1041-42, 104 S.Ct. at 3484-85, citing *United States v. Janis,* 428 U.S. 433, 446-48, 96 S.Ct. 3021, 3028-29, 49 L.Ed.2d 1046 (1976).

6

Court found that the INS had taken steps to deter Fourth Amendment violations such that exclusion would be "unlikely to provide significant, much less substantial, additional deterrence."[14]

In *Janis,* the taxpayer sued the IRS for a return of taxes paid from an earlier assessment. The IRS counterclaimed for the unpaid portion of the tax assessment. The taxpayer argued that the evidence supporting the tax assessment, which was illegally obtained by state police officers, should have been excluded. Disagreeing, the *Janis* Court held that

> exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion.[15]

Continuing its weighing approach, the *Lopez-Mendoza* Court found the costs of applying the exclusionary rule in a deportation hearing both unique and significant. It reasoned that applying the exclusionary rule in a deportation proceeding that sought to prevent ongoing illegal activity as opposed to punishing the alien for past transgressions would allow courts "to close their eyes to ongoing violations of the law,"[16] and held that evidence obtained in violation of the Fourth Amendment should not be excluded in a deportation hearing.[17]

------

[14]*Lopez-Mendoza,* 468 U.S. at 1046, 104 S.Ct. at 3487, quoting *Janis,* 428 U.S. at 458, 96 S.Ct. at 3034.

[15]*Janis,* 428 U.S. at 454, 96 S.Ct. at 3032.

[16]468 U.S. at 1046, 104 S.Ct. at 3487.

[17]*Id.* at 1050-51, 104 S.Ct. at 3489-90.

Subsequently, we applied *Lopez-Mendoza* in the context of a hearing citing a company for violations of the Occupational Safety and Health Act, and held that the exclusionary rule does not apply in administrative proceedings to correct on ongoing violation, but that illegally obtained evidence "must be excluded for purposes of "punishing the crime.' "[18] "Punishing the crime" includes penalties assessed for a past violation.[19] This holding does not appear to follow *Janis,* however, which did not involve a continuing violation of law, but an assessment of past violations.

Velasquez-Tabir was assessed a penalty of $250 for his violation of § 1324c(a)(2). The relief sought by the INS could thus be interpreted as a punishment of the crime, unrelated to continuing violations.

Employing the weighing analysis of *Lopez-Mendoza* and *Janis* in analyzing Velasquez-Tabir's case, we discern that the deterrence value in excluding the evidence would be low given that Texas Arai's actions, assuming they constituted a labor law violation, would have been sanctionable under the NLRA, and that there may be little deterrence to employers by excluding evidence in proceedings not involving the employers. Nonetheless, we do not perceive the costs in excluding the evidence here to be as significant as they were in *Lopez-Mendoza,* as the relief sought by the INS was a civil penalty against Velasquez-Tabir for his past violation of

---

[18]*Smith Steel Casting, Co. v. Brock,* 800 F.2d 1329, 1334 (5th Cir.1986).

[19]*Id.*

immigration laws.

In a criminal context, we have held that suppression of evidence obtained in violation of a regulatory statute is inappropriate when (1) the defendant's constitutional rights are not violated, and (2) Congress did not express an intention that suppression of the evidence should result when the evidence is obtained in violation of the statute.[20] We reiterated that we discourage suppression of evidence, even for gross illegalities, when the illegalities do not infringe the defendant's constitutional rights.[21]

Velasquez-Tabir does not argue that obtaining the subject evidence implicated a constitutional violation. And we have been unable to locate any provision of the NLRA indicating a Congressional intent to provide for exclusion, in an INS proceeding, of evidence obtained in violation of the NLRA. When we apply the holding in *Kington,* we come inescapably to the conclusion that the INS's evidence in Velasquez-Tabir's case was not improperly admitted.

The Second Circuit recently addressed the effect of *Sure-Tan, Inc.,* in a deportation case, holding that evidence obtained from an

---

[20]*United States v. Kington,* 801 F.2d 733, 737 (5th Cir.1986).

[21]*Id.* at n. 1, citing *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445-46, 65 L.Ed.2d 468 (1980); *see also United States v. Edgar,* 82 F.3d 499, 510-11 (1st Cir.) (Government's violation of Fair Credit Reporting Act (FCRA) was not ground for suppression in criminal proceeding where Congress did not provide for such a remedy in the FCRA), *cert. denied,* --- U.S. ----, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996).

employer's violation of labor laws did not necessitate exclusion of the evidence in the employee's deportation hearing.[22] There the court reasoned that excluding evidence of an alien's illegal presence in the country because the evidence was obtained from unlawful labor practices of his employer was wholly inconsistent with the enforcement of the INA. "Whether or not an undocumented alien has been the victim of unfair labor practices, such an alien has no entitlement to be in the United States."[23] Citing *Lopez-Mendoza,* the Second Circuit held that if the exclusionary rule is applicable at all, it is only in cases implicating something other than Fourth Amendment violations, "only to deprivations that affect the fairness or reliability of the deportation proceeding."[24] The Second Circuit saw neither unfairness in using evidence obtained during a labor dispute nor any indication that the evidence was unreliable.[25]

In *Sure-Tan, Inc.,* the undocumented aliens were deported. Even though the remedies for the labor violation were reinstatement offers from the employer, the Supreme Court held that such offers could not abrogate the congressional objectives of the INA.[26]

---

[22]*Montero v. Immigration and Naturalization Service,* 124 F.3d 381 (2nd Cir.1997).

[23]*Id.* at 385-86.

[24]*Id.,* citing *Lopez-Mendoza,* 468 U.S. at 1050-51, 104 S.Ct. at 3489-90.

[25]*Montero,* 124 F.3d 381, 385-86.

[26]*Sure-Tan, Inc.,* 467 U.S. at 902-03, 104 S.Ct. at 2814-15 ("in devising remedies for unfair labor practices, the [NLRB] is obliged to take into account another equally important Congressional

Applying this reasoning from *Sure-Tan, Inc.* and the analysis of *Montero,* we conclude that, even if the INS's evidence was obtained in violation of the NLRA, the Congressional intent of the INA would be abrogated if such evidence were excluded in an INS hearing implicating a civil penalty for a past violation of the INA.  It follows that the ALJ's consideration of the evidence purportedly obtained in violation of the NLRA was not error.  In the absence of error, Velasquez-Tabir's petition for review should be and hereby is

DENIED.

---

objective ... the objective of deterring unauthorized immigration that is embodied in the INA").