Revised September 27, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-40958

_____


REYNALDO REQUENA-RODRIGUEZ,

Petitioner-Appellant,

v.

KENNETH PASQUARELL,
Immigration & Naturalization Service, District Director,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

September 15, 1999

Before JONES, DUHÉ, and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Requena appeals the district court's denial of his petition for a writ of habeas corpus. He contests the INS's conclusion that he is statutorily ineligible for discretionary relief from deportation. His case implicates two recent sets of changes to the immigration laws, both of which have precipitated a flurry of federal court decisions on retroactivity and Congress's power to limit habeas jurisdiction.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") eliminated discretionary relief from deportation for

aliens -- like Requena -- who had been convicted of aggravated felonies.[1]

The limitations on § 212(c) relief imposed by AEDPA § 440(d) were short-lived, as IIRIRA § 304(b) repealed § 212(c) itself. See IIRIRA, Pub. L. No. 104-208, Div. C, § 304(b), 110 Stat. 3009-546, -597. As discussed below, Requena's case falls into IIRIRA's transitional rules, making the subsequent repeal inapplicable to this case.[2] The merits of Requena's appeal turn on the following two issues: (1) whether the relevant section of AEDPA, § 440(d), is triggered by convictions that predated AEDPA, and (2) whether AEDPA § 440(d) violates Requena's equal protection rights because it treats "deportable" aliens differently from "excludable" ones. Before addressing these arguments on the merits, however, this court must consider whether jurisdiction to entertain such claims in habeas cases has been limited by AEDPA itself, or by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

Although this court determines that § 2241 habeas jurisdiction exists to review claims such as Requena's under IIRIRA's transitional rules, it rejects Requena's claims on the merits. AEDPA § 440(d)'s bar on discretionary relief applies to convictions that predated AEDPA, and its distinction between excludable and deportable aliens passes constitutional muster.

### I. Background

In February 1994, Requena pled nolo contendere to two counts of "indecency with a child," a second-degree felony in Texas. See Tex. Penal Code Ann. § 21.11(a)(1), (c) (West 1994). The charges arose from Requena's "sexual

---

[1] AEDPA, Pub. L. No. 104-32, § 440(d), 110 Stat. 1214, 1277 (1996).

The limitations on discretionary relief imposed by AEDPA § 440(d) were short-lived, as § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed the underlying provision for discretionary relief. See IIRIRA, Pub. L. No. 104-208, Div. C, § 304(b), 110 Stat. 3009-546, -597. As discussed below, in Part II, Requena's case falls into IIRIRA's transitional rules, making the subsequent elimination of § 212(c) relief inapplicable to this case.

contact" with both of his seven-year-old twin sons.  Requena was sentenced to a six-year prison term and released early in February 1996.

Because Requena -- who came to the United States from Mexico in October 1983 -- is an alien, his felony convictions made him susceptible to deportation.  See INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) (1994) ("Any alien who is convicted of an aggravated felony at any time after entry is deportable.").[3]  When Requena was released from prison in February 1996, the INS initiated deportation proceedings against him.

In those proceedings, Requena did not contest his deportability but applied for relief from deportation under former § 212(c) of the Immigration and Nationality Act (INA), which, before being repealed in 1996, gave the Attorney General discretion to waive deportation for some long-time legal permanent residents.  See INA § 212(c), 8 U.S.C. 1182(c) (1994).  In August 1996, an immigration judge found Requena statutorily ineligible for a § 212(c) waiver because recently-enacted AEDPA § 440(d) had eliminated § 212(c) relief for aliens convicted of aggravated felonies.[4]  In August 1997, the Board of Immigration Appeals also found that AEDPA § 440(d) barred Requena from § 212(c) relief. Requena's petition for review in this court was denied in September 1997.

A few days later, Requena filed a habeas petition in district court, arguing that AEDPA § 440(d) violated his equal protection rights because it withdrew § 212(c) relief for deportable but not excludable aliens without a rational basis for this distinction.  The magistrate judge concluded that the district court had habeas jurisdiction under 28 U.S.C. § 2241 to consider claims of grave constitutional error or a fundamental miscarriage of justice, but that

---

[3]     In this opinion, citations to the 1994 United States Code are used to refer to relevant former versions of INA provisions that have since been amended, redesignated, or deleted.

[4]     As amended by AEDPA § 440(d), § 212(c) included the following limitation: "This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii)...."  8 U.S.C. § 1182(c) (1994) (as amended in 1996 by AEDPA § 440(d)).

Requena's equal protection claim was without merit. Both sides objected to the magistrate judge's recommendation: the government on jurisdiction, and Requena on the merits and on jurisdiction. In his objection, Requena also contested the application of AEDPA § 440(d) to him as "unlawful[ly] retroactive,"[5] an argument he had not made in the habeas petition itself. The district court, after "carefully review[ing] those objections and the entire file," found the magistrate judge's recommendation to be "essentially correct" and denied Requena's habeas petition.

This court reviews de novo the district court's legal conclusions on jurisdiction and on the merits. See United States v. Nutall, 180 F.3d 182, 188 (5th Cir. 1999) (constitutional challenges); United States ex rel. Foulds v. Texas Tech Univ.,171 F.3d 279, 288 (5th Cir. 1999) (subject-matter jurisdiction); Graham v. Johnson, 168 F.3d 762, 772 (5th Cir. 1999) (retroactivity).

## II. Which Rules Apply?

After IIRIRA, two sets of rules -- transitional and permanent -- are available to govern immigration proceedings, depending on their timing. The transitional rules apply to deportation or exclusion proceedings that "commence before ... April 1, 1997, and conclude more than thirty days after [IIRIRA's] passage on September 30, 1996." Lerma de Garcia v. INS, 141 F.3d 215, 216 (5th Cir. 1998); see also IIRIRA § 309(c)(1), (4), 110 Stat. 3009-625, -626. Requena's case falls squarely under the regime of IIRIRA's transitional rules. His deportation proceeding commenced in February 1996 and did not conclude until August 1997. See 8 U.S.C.A. § 1101(a)(47)(B) (West 1999) (added by AEDPA) (defining final order of deportation).

Generally, federal court jurisdiction over transitional cases is governed by the uncodified judicial review provisions in IIRIRA § 309(c)(4), and

---

[5] Part of the paragraph in Requena's objections making this argument refers to "§ 440(a)," but this is clearly a mistake, as he was objecting to the Attorney General's opinion in Soriano, which was about the retroactivity of § 440(d). See In re Soriano, Int. Dec. 3289, 1996 WL 426888 (BIA 1996, A.G. 1997).

by INA § 106 as amended by AEDPA (but not as amended by IIRIRA).[6]   The incorporation of AEDPA's changes to INA § 106 makes relevant[7] AEDPA § 440(a), which declares that final orders of deportation against criminal aliens "shall not be subject to review by any court."[8]

In addition to IIRIRA § 309(c)(4) and AEDPA §§ 440(a), one provision of IIRIRA's permanent rules applies even to transitional cases: the new INA § 242(g) (codified at 8 U.S.C.A. § 1252(g) (West 1999)).[9]

Until the Supreme Court spoke on the matter this year, most courts and parties assumed that § 1252(g)[10] covered the spectrum of deportation cases and drastically limited judicial review in all of them.  In American-Arab,[11] however, the Supreme Court explained that § 1252(g)'s scope is much narrower than was generally assumed.  Its reach extends only to the "three discrete actions" listed in the statute itself: decisions or actions to "commence proceedings,

---

[6]   See IIRIRA § 309(c)(4), 110 Stat. 3009-626.

[7]   AEDPA § 401(e), a provision not before us in this case, repealed a pre-existing provision for habeas corpus for aliens held in custody pursuant to deportation orders.  AEDPA § 401(e)(3), 110 Stat. 1268 (eliminating old 8 U.S.C. § 1105a(a)(10) (1994)).

[8]   AEDPA § 440(a), 110 Stat. 1276-77 (adding a new 8 U.S.C. § 1105a(a)(10)).  This court has previously found that AEDPA § 440(a) applies to all cases pending on April 24, 1996.  See Mendez-Rosas v. INS, 87 F.3d 672, 676 (5th Cir. 1996).
    The Eighth Circuit has recently characterized AEDPA § 440(a) as having been "superseded by the IIRIRA transition rules," in particular by the more specific IIRIRA § 309(c)(4)(G).  Shah v. Reno, --- F.3d ---, --- n.2 (3d Cir. 1999).  According to the terms of § 309(c)(4), that would be true only if AEDPA § 440(a)'s amendment to INA § 106 rules were "contrary" to the transitional rules -- an unlikely outcome, given the close similarity between AEDPA § 440(a) and IIRIRA § 309(c)(4)(G).  In any event, this court has treated AEDPA § 440(a) as persisting alongside the transitional rules.  See Nguyen v. INS, 117 F.3d 206, 207 (5th Cir. 1997).

[9]   See IIRIRA § 306(c)(1), 110 Stat. 3009-612 ("subsection (g) ... shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings").

[10]   The new INA § 242(g) reads: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."  8 U.S.C.A. § 1252(g) (West 1999).

[11]   Reno v. American-Arab Anti-Discrimination Comm., 119 S. Ct. 936 (1999).

<u>adjudicate</u> cases, or <u>execute</u> removal orders." See <u>American-Arab</u>, 119 S. Ct. at 943 (emphasis in original). Although the briefing in Requena's appeal was completed before <u>American-Arab</u> was decided, the parties agreed at oral argument that according to <u>American-Arab</u>, § 1252(g) does not govern Requena's case, which challenges a final deportation order. There appears still to be some uncertainty about how far § 1252(g) extends,[12] but the parties are correct in this case. This is consistent with two recent Fifth Circuit decisions about § 1252(g),[13] and comports with the direct holdings of at least three other circuits.[14]

### III. Habeas Jurisdiction under IIRIRA's Transitional Rules

The relevant jurisdictional question in this case can now be summarized as follows: Does any habeas jurisdiction to review final deportation

---

[12] <u>Compare, e.g.</u>, <u>Shah v. Reno</u>, --- F.3d ---, --- (8th Cir. 1999) (§ 1252(g) does not apply to challenge against final deportation order for failure to consider § 212(c) relief), <u>Mustata v. U.S. Dep't of Justice</u>, 179 F.3d 1017, 1022-23 (6th Cir. 1999) (§ 1252(g) does not apply to claim of ineffective assistance of counsel in deportation hearing), <u>Stewart v. U.S. INS</u>, --- F.3d ---, --- (4th Cir. 1999) (§ 1252(g) does not apply to challenge against denial of motion to reopen deportation proceedings), <u>and</u> <u>Parra v. Perryman</u>, 172 F.3d 954, 957 (7th Cir.1999) (§ 1252 does not apply to challenge against detention that could be resolved without affecting pending removal proceedings), <u>with</u> <u>Singh v. Reno</u>, No. 98-3584, 1999 WL 335675 (7th Cir. as amended Aug. 10, 1999) (§ 1252(g) does apply to challenge against removal order for failure to consider discretionary relief for criminal alien), <u>Mapoy v. Carroll</u>, --- F.3d ---, --- (4th Cir. 1999) (§ 1252(g) does apply to petition for release from detention that "clearly arose from the INS's decision to execute a removal order"); <u>and</u> <u>Gray v. Reno</u>, --- F. Supp. 2d ---, ---, 1999 WL 562417, at *2 (D. Mass. July 23, 1999) (§ 1252(g) does apply to challenge against failure to consider § 212(c) relief).

[13] In <u>Alvidres-Reyes v. Reno</u>, 180 F.3d 199 (5th Cir. 1999), this court held that § 1252(g) did apply to aliens who sought a declaration that they were eligible for pre-IIRIRA suspension-of-deportation relief before they were even in deportation proceedings. Because this was tantamount to a challenge to the Attorney General's "refusal to initiate proceedings," § 1252(g) applied and deprived the federal courts of jurisdiction. <u>Id.</u> at 205.
In <u>Zadvydas v. Underdown</u>, No. 97-31345, 1999 WL 604311 (5th Cir. Aug. 11, 1999), this court held that § 1252(g) did not apply to a challenge to detention pending deportation. It noted that "detention, while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g) under [<u>American-Arab</u>]." <u>Id.</u> at *3 (citing <u>Parra</u>, 172 F.3d at 957).

[14] <u>See</u> <u>Jurado-Gutierrez v. Greene</u>, No. 97-1437 et al., 1999 WL 637038, at *6-8 (10th Cir. Aug. 19, 1999); <u>Shah</u>, --- F.3d at --- (8th Cir.); <u>Mayers v. U.S. Dep't of INS</u>, 175 F.3d 1289, 1297 (11th Cir. 1999).

**6**

orders survive under IIRIRA's transitional rules where § 1252(g) does not apply and where old INA § 106(a)(10) has been replaced by AEDPA § 440(a)?

Apart from dicta in cases involving direct review of the BIA,[15] the Fifth Circuit has not answered this question. Other circuits, however, are not strangers to it. There is some consensus about the answer -- so long as the question is phrased with all of the qualifications included above. But it is conceded by all that the complex and oft-revised statutory scheme at issue does not yield pat answers.

Since American-Arab was decided, the Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits have found that § 2241 habeas jurisdiction continues to exist under IIRIRA's transitional rules outside of § 1252(g).[16] The Third Circuit has reiterated its view that § 2241 jurisdiction persists even under IIRIRA's permanent provisions.[17] Presumably, the First and Second Circuits likewise will feel no compulsion from American-Arab to abandon their prior determinations that § 2241 survives.[18] Given that the Ninth Circuit has beat a noncommittal retreat from its earlier holding that IIRIRA repeals § 2241,[19] the Seventh Circuit is the only circuit arguably maintaining that there is no habeas jurisdiction in cases under the transitional rules.[20]

---

[15]  See Lerma de Garcia, 141 F.3d at 217 (repeating notations in prior cases that "criminal deportees retain some opportunity to apply for writs of habeas corpus").

[16]  See Selgeka v. Carroll, --- F.3d --- (4th Cir. 1999) (in a case not involving AEDPA § 440(a)); Mustata v. U.S. Dep't of Justice, 179 F.3d 1017 (6th Cir. 1999) (in a case not involving AEDPA § 440(a)); Shah v. Reno, --- F.3d --- (8th Cir. 1999); Jurado-Gutierrez v. Greene, No. 97-1437 et al., 1999 WL 637038 (10th Cir. Aug. 19, 1999); Mayers v. U.S. Dep't of INS, 175 F.3d 1289 (11th Cir. 1999).

[17]  See DeSousa v. Reno, No. 99-1115, 1999 WL 643171 (3d Cir. Aug. 25, 1999); Catney v. INS, 178 F.3d 190 (3d Cir. 1999).

[18]  See Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999); Henderson v. INS, 157 F.3d 106 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999).

[19]  See Hose v. INS, 180 F.3d 992, 995 n.2, 996 (9th Cir. 1999) (en banc).

[20]  See LaGuerre v. Reno, 164 F.3d 1035 (7th Cir. 1998); see also Singh v. Reno, No. 98-3584, 1999 WL 335675 (7th Cir. as amended Aug. 10, 1999)

(continued...)

Because so many other circuits have written impressively and extensively about the impact of AEDPA and IIRIRA on habeas jurisdiction, and because we now have the benefit of American-Arab's discussion of § 1252(g), it is not necessary to belabor an answer to the jurisdictional question in this case. We conclude that § 2241 habeas jurisdiction continues to exist under IIRIRA's transitional rules in cases involving final orders of deportation against criminal aliens, and that habeas jurisdiction is capacious enough to include constitutional and statutory challenges if those challenges cannot be considered on direct review by the court of appeals. A few observations will suffice to explain why we reach this conclusion and to highlight its limits.

Because this decision is limited to the transitional rules, giving wide berth to potential Suspension Clause pitfalls does not play the immediate role here that it did in some earlier cases.[21]

Instead, this court finds particularly compelling the language of the statutory provisions at issue. As both hoary and recent Supreme Court cases explain, Congress must be explicit if it wishes to repeal habeas jurisdiction.[22] Yet the alleged jurisdiction-stripping provisions here are simply not explicit. It is axiomatic that the mere repeal of old INA § 1105a(a)(10) was inadequate to effect a repeal of § 2241 if § 1105a(a)(10) added to habeas jurisdiction rather

---

(...continued)
(following LaGuerre).
     Contrary to the Ninth Circuit's suggestion in the Hose panel opinion, Hose v. INS, 141 F.3d 932, 935 (9th Cir. 1998), the D.C. Circuit did not decide that IIRIRA repealed § 2241 in Ramallo v. Reno, 114 F.3d 1210 (D.C. Cir. 1997), cert. denied, 119 S. Ct. 1139 (1999). In fact, Ramallo concluded that the appellee "retain[ed] the right to pursue claims of constitutional infirmity on habeas." 114 F.3d at 1214.

[21]    See Shah, --- F.3d at ---; Henderson, 157 F.3d at 119; Goncalves, 144 F.3d at 122-23.

[22]    See Felker v. Turpin, 518 U.S. 651, 660-61, 116 S. Ct. 2333, 2338-39 (1996); Ex parte Yerger, 75 U.S. (8 Wall.) 85, 105-06 (1869). Felker was decided on June 28, 1996, three months before IIRIRA became law; its reminder that habeas repeal requires explicit language was fresh when Congress was considering the transitional and permanent provisions of IIRIRA.

than substituting for it.[23]  The transitional provisions in IIRIRA § 309(c)(4) declare only that "there shall be no <u>appeal</u>" of decisions about discretionary relief or in criminal aliens' cases.  IIRIRA § 309(c)(4)(E), (G), 110 Stat. 3009-626 (emphasis added).  These provisions refer to direct appeals to the circuit courts, <u>see</u> <u>Lerma de Garcia</u>, 141 F.3d at 216-17, rather than to habeas jurisdiction in the district courts.  Another relevant provision, AEDPA § 440(a), which we have found to "differ[ ] only trivially" from IIRIRA § 309(c)(4)(G),[24] says that final deportation orders of criminal aliens "shall not be subject to <u>review</u> by any court."  AEDPA § 440(a), 110 Stat. 1276-77 (emphasis added).  This, while slightly more emphatic, can also be construed as normal judicial review, rather than collateral review.

None of these provisions is nearly as explicit as § 1252(g) and two other permanent provisions, which all begin with this more preclusive language: "[n]otwithstanding <u>any other</u> provision of law, no court shall have <u>jurisdiction</u> to...."  8 U.S.C.A. § 1252(a)(2)(B) (West 1999) (emphases added) (denials of discretionary relief); § 1252(a)(2)(C) (removal of criminal aliens); § 1252(g) (listed non-statutory discretionary decisions).  IIRIRA's permanent provisions also contain the "unmistakable 'zipper' clause of § 1252(b)(9)," <u>American-Arab</u>, 119 S. Ct. at 943, which shows that the new § 1252 is designed to handle questions of "interpretation and application of constitutional and statutory provisions," 8 U.S.C.A. § 1252(b)(9) (West 1999).

Chief Judge Posner, writing for the Seventh Circuit in <u>LaGuerre</u>, has cogently explained the functional difficulties caused by finding that habeas jurisdiction exists to review deportation orders.  Put simply, Congress intended

---

[23]     Some cases between 1961 and 1996 appear to refer to habeas relief as being available under <u>either</u> § 1105a(a) <u>or</u> § 2241.  <u>See</u> <u>Jurado-Gutierrez</u>, 1999 WL 637038, at *7 (citing cases).  This would mean § 1105a(a) did not repeal § 2241 jurisdiction in 1961 and also that removal of § 1105a(a) alone was insufficient to eliminate § 2241 jurisdiction in 1996.

[24]     <u>Lerma de Garcia</u>, 141 F.3d at 217 n.1 (quoting <u>Nguyen v. INS</u>, 117 F.3d 206, 207 (5th Cir. 1997)); <u>see also</u> <u>Hall v. U.S. INS</u>, 167 F.3d 852, 855 (4th Cir. 1999) (equating AEDPA § 440(a) with IIRIRA § 309(c)(4)(G)).

to <u>streamline</u> review of deportation decisions, not multiply the fora to which criminal aliens could resort, thereby delaying their deportations. See LaGuerre, 164 F.3d at 1039.

It is true that under our decision two different courts will have the power to delay deportation. But there will be no overlap between direct review and habeas review because it has already been made clear that this court -- unlike the Seventh Circuit[25] -- is powerless to review criminal aliens' cases under the transitional rules. In actuality, this solution essentially continues the original streamlining regime -- operative from 1961 to 1996 -- under which habeas was available only where direct review was not. See United States ex. rel. Marcello v. District Dir. of INS, 634 F.2d 964, 972 (5th Cir. 1981) (describing two "alternate methods of obtaining review"). Even LaGuerre admits that habeas jurisdiction is available under the pre-AEDPA regime when "direct review by [the courts of appeals] is unavailable." LaGuerre, 164 F.3d at 1038.[26]

Thus, this court joins the majority of other circuits and holds that § 2241 habeas jurisdiction remains in transitional cases where § 1252(g) does not apply. This jurisdiction is broad enough to encompass Requena's retroactivity claim and his equal protection claim -- both of which would have been cognizable even at the lowest pre-IIRIRA ebb of immigration habeas jurisdiction. See United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77, 77 S. Ct. 618, 621 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U. S. 260, 265, 74 S. Ct. 499, 502 (1954).

---

[25] The Seventh Circuit made a partial exception on direct review for "constitutional issues." LaGuerre, 164 F.3d at 1040. It also hedged a bit on a question of statutory retroactivity. Id. at 1041 ("[M]aybe the door to judicial review has been left a little more ajar than we have suggested. But that is another question that we need not answer today." (citations omitted)).

[26] We also note that a subsequent Seventh Circuit decision characterized LaGuerre as holding that § 1252(g) "supersedes § 2241 in cases to which it applies." Parra, 172 F.3d at 956; see also Singh, 1999 WL 335675, at *3 (finding no habeas jurisdiction in transitional case where § 1252(g) applied); but see Turkhan v. Perryman, No. 98-1964, 1999 WL 615531, at *7 & n.7 (7th Cir. Aug. 16, 1999) (following LaGuerre as barring habeas jurisdiction under AEDPA § 440(a), without specifying which IIRIRA amendments, including § 1252(g), apply; but allowing habeas jurisdiction under the circumstances).

## IV. Retroactive Application of AEDPA § 440(d)

On the merits, Requena argues that AEDPA § 440(d)'s limits on § 212(c) relief should not be triggered by convictions that predated AEDPA.[27]

The government argues that Requena forfeited his retroactivity argument by failing to plead it in his habeas petition or to raise it prior to his objections to the magistrate judge's recommendation. Under the circumstances, however, this court will consider Requena's argument. Though belated and undeveloped, Requena's claim that applying AEDPA § 440(d) to his case would be illegally retroactive was raised in the district court, cf. New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 n.4 (5th Cir. 1996) (argument not forfeited when presented in a motion to vacate judgment that could have been more specific), and the district court declared that it considered Requena's objections before denying his habeas petition.[28] Requena's retroactivity argument is purely legal in nature, and our inquiry will be little prejudiced by the district court's failure to discuss it. Nor will the government be prejudiced; it has fully briefed this issue and wins on it.

As with jurisdiction, this is not the first circuit to address whether AEDPA § 440(d) is triggered by convictions that predated AEDPA. Some courts have concluded that AEDPA § 440(d) does not retroactively apply to

---

[27] Requena does not argue that AEDPA § 440(d) should not apply to deportation proceedings that were pending on the date it became effective. Although he contests the Attorney General's ruling in Soriano -- which applied § 440(d) to § 212(c) petitions that were pending when AEDPA became effective -- his argument is clearly limited to the contention that "§ 440(d) of AEDPA may not be applied retroactively to conduct or events, in this case [Requena's] negotiated plea agreement and the resulting conviction, that pre-dated the date of enactment of AEDPA."

[28] Our decision to consider Requena's arguments does not detract from a district court's power to decide that legal arguments not raised before a magistrate judge are waived. See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1991) (a "party is not entitled as of right to de novo review by the [district] judge of an argument never seasonably raised before the magistrate" (emphasis added)), cited in Cupit v. Whitley, 28 F.3d 535, 534 n.5 (5th Cir. 1994).

petitions for § 212(c) relief that were pending when AEDPA went into effect.[29] But the circuits that have considered the precise question here -- whether pre-AEDPA convictions can trigger AEDPA § 440(d) -- have concluded that it does apply.[30]

Under Landgraf v. USI Film Products,[31] "we look first to congressional intent in determining the temporal reach of a statute." Graham v. Johnson, 168 F.3d 762, 781 (5th Cir. 1999). "When Congress's intent is not clear, however, we employ the default rule against retroactivity, using the analysis laid out in Landgraf to determine whether the statute is genuinely retroactive." Id.

Congressional intent about the retroactivity of AEDPA's numerous provisions is not always clear. See Okoro v. INS, 125 F.3d 920, 924 n.7 (5th Cir. 1997) (comparing retroactivity inquiries with respect to AEDPA §§ 107(c), 440(a), and 440(d)). AEDPA § 440(d) itself has no effective date. Requena argues that Congress provided for retroactive application for several provisions in AEDPA, implying that any provisions lacking an explicit declaration of an intent to sweep-in prior conduct must, by implication, be intended to apply only going forward. Yet, several provisions in AEDPA Title IV are explicitly made to apply only prospectively. See AEDPA §§ 440(f), 421(b), 435(b). To the extent that any negative implication can be extracted from the statute, it would work against Requena, since AEDPA § 440(f) makes most of AEDPA's expansions in the definition of aggravated felonies applicable "to convictions entered on or after" AEDPA's enactment. AEDPA § 440(f), 110 Stat. 1278. Given the welter of provisions with differing instructions on retroactivity, however, we hesitate to find a clear congressional intent with respect to AEDPA § 440(d).

---

[29] See Shah, --- F.3d at ---; Mayers, 175 F.3d at 1301-1304; Sandoval, 166 F.3d at 239-42; Henderson, 157 F.3d at 128-30 & n.28; and Goncalves, 144 F.3d at 126.

[30] See DeSousa v. Reno, 1999 WL 643171, at *8-10 (3d Cir. Aug. 25, 1999); Jurado-Gutierrez v. Greene, 1999 WL 637038, at *14 (10th Cir. Aug. 19, 1999); Turkhan v. Perryman, 1999 WL 615531, at *12 (7th Cir. Aug. 16, 1999).

[31] Landgraf v. USI Film Prods., 511 U.S. 244, 114 S. Ct. 1483 (1994).

Even so, under the second Landgraf step, the consequence of allowing AEDPA § 440(d) to be triggered by convictions that came before AEDPA's enactment is not genuinely retroactive. "[I]t is well settled that Congress has the authority to make past criminal activity a new ground for deportation,"[32] and, before AEDPA, there was a strong tradition of finding that expansions of the criminal bar to § 212(c) relief had no retroactive effect.[33]  Landgraf itself explained that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law.  Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment."  511 U.S. at 269-70, 114 S. Ct. at 1499 (citation and footnote omitted).

The non-retroactive effect of AEDPA § 440(d) is made clear by reiterating what it accomplishes: It shrinks the class of already-deportable criminal aliens who can be considered for discretionary relief.  Requena cannot deny that he is deportable.  His convictions made him deportable in 1994, well before AEDPA.  He contends that a change in the scope of § 212(c) relief would have "affect[ed] the calculus of risks" associated with his criminal conduct and his decision to plead nolo contendere.  But he could not seriously suggest that he would have refrained from sexually molesting his children, or changed his plea, had he only known that in addition to suffering a prison term and a finding of deportability, he would not be eligible to be considered for a possible last-ditch reprieve from the Attorney General.  Any of Requena's upset expectations were inadequate to attach new legal consequences to his pre-AEDPA conduct.

---

[32]     Moosa v. INS, 171 F.3d 994, 1009 (5th Cir. 1999) (quoting Ignacio v. INS, 955 F.2d 295, 298 (5th Cir. 1992)).

[33]     See, e.g., Scheidemann v. INS, 83 F.3d 1517, 1523 (3d Cir. 1996); Samaniego-Meraz v. INS, 53 F.3d 254, 257-58 (9th Cir. 1995); De Osorio v. INS, 10 F.3d 1034, 1042 (4th Cir. 1993); Barrerio v. INS, 989 F.2d 62, 64 (1st Cir. 1993).

Because AEDPA § 440(d) has no retroactive effect when it is triggered by pre-AEDPA convictions, it was proper to apply it to Requena's case. This holding comports with those of the Third, Seventh, and Tenth Circuits.[34]

### V. Fifth Amendment Equal Protection

In his second argument on the merits, Requena contends that AEDPA § 440(d)'s limits on § 212(c) relief violate his right to equal protection because they deny a chance for discretionary relief to deportable aliens but not to excludable ones.

Requena's claim is inspired by the history of § 212(c). Before IIRIRA, the INA always distinguished between exclusion proceedings, which were brought against aliens attempting to enter the United States (including those returning to the United States), and deportation proceedings, which were brought against aliens already present in the United States. (IIRIRA's permanent provisions have collapsed both kinds of proceedings into a single category of "removal.") Although the original § 212(c) literally applied only in exclusion proceedings, the INS began allowing § 212(c) applications in deportation proceedings for aliens who had previously left the United States and returned, apparently under the notion that such deportation proceedings were like delayed exclusion proceedings. But the INS still did not allow § 212(c) applications in deportation proceedings against aliens who had never left the United States. In a decision subsequently embraced by the BIA, the Second Circuit held that there was no rational basis for this distinction between deportable aliens who had never left the United States and those who had left and returned to the United States. See Francis v. INS, 532 F.2d 268 (2d Cir. 1976); see also Hussein v. INS, 61 F.3d 377, 379 & n.3 (5th Cir. 1995) (describing history).

Yet, the justification for AEDPA § 440(d)'s differential limits on § 212(c) relief is not so tenuous as the one rejected in Francis. The distinction now is not among aliens in deportation proceedings, but between those

_____

[34]     See the cases cited in footnote 30.

**14**

being deported and those being excluded. Even assuming that aliens in deportation proceedings are "similarly situated" to those in exclusion proceedings, there is a rational basis for the distinction. As LaGuerre explained:

> Congress's more lenient treatment of excludable as distinct from deportable aliens ... creates an incentive for deportable aliens to leave the country -- which is after all the goal of deportation -- without their having to be ordered to leave at the government's expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.

164 F.3d at 1041. See also DeSousa, 1999 WL 643171, at *8 (rejecting equal protection claim on similar grounds); Jurado-Gutierrez, 1999 WL 637038, at *15 (following LaGuerre and rejecting equal protection claim).

This "facially legitimate and bona fide reason" suffices to demonstrate the lack of merit in Requena's equal protection claim, given "the need for special judicial deference to congressional policy choices in the immigration context." Fiallo v. Bell, 430 U.S. 787, 794, 793, 97 S. Ct. 1473, 1479, 1478 (1977) (internal quotation omitted). Requena's equal protection rights were not violated by AEDPA § 440(d)'s restriction of § 212(c) relief.[35]

## VII. Conclusion

This decision does not determine whether any habeas jurisdiction remains under IIRIRA's permanent provisions[36] -- though we note that congressional intent to limit jurisdiction is expressed more forcefully in the permanent than in the transitional rules. Nor does this case decide whether the new § 1252(g) repeals habeas jurisdiction for those transitional cases to which

---

[35] The government contends that an equal protection claim against the federal government must be predicated on the infringement of a "liberty interest" protected by Due Process. This would seem to be a logical result of importing equal protection into the Fifth Amendment, but courts have not made that a threshold inquiry. Because we reject Requena's claim by finding a rational basis for any distinction, we need not determine whether a successful equal protection claim requires a separate inquiry about protected liberty interests.

[36] Of course, INA 242(e)(2) explicitly provides a narrow habeas avenue for aliens challenging their admissibility decisions. See 8 U.S.C.A. 1252(e)(2) (West 1999).

it does apply in the wake of <u>American-Arab</u>.[37]  We conclude only that under the transitional rules, habeas jurisdiction lies to consider constitutional and statutory claims that cannot be heard in this court on direct review.

On the merits, AEDPA § 440(d)'s limits on § 212(c) relief can be triggered by convictions that predate AEDPA, and its distinction between deportation and exclusion proceedings does not violate the equal protection component of the Fifth Amendment Due Process Clause.  Accordingly, the district court's judgment is **AFFIRMED**.

**AFFIRMED**

---

[37]     <u>Cf.</u> <u>Mapoy v. Carroll</u>, --- F.3d --- (4th Cir. 1999) (finding § 1252(g) repeals § 2241 habeas jurisdiction where it applies).  Of course, the scope of § 1252(g)'s repeal of habeas will essentially follow that of the permanent provisions.  <u>See</u> <u>American-Arab</u>, 119 S. Ct. at 945 ("In cases to which § 1252(g) applies, the rest of § 1252 is incorporated through the '[e]xcept as provided in this section' clause.").

The Eleventh Circuit has found that IIRIRA's permanent provisions taken as a whole do repeal habeas jurisdiction.  <u>See</u> <u>Richardson v. Reno</u>, 180 F.3d 1311 (1999) (on remand from the Supreme Court).

We note that this court's recent decision in <u>Alvidres-Reyes</u> did not mention habeas jurisdiction, but did conclude that "the federal courts lack jurisdiction to hear the plaintiffs-aliens' challenge to the Attorney General's decision to decline to commence proceedings or to adjudicate deportations, or to hear the plaintiffs' claim for suspension of their deportations which concomitantly arises therefrom."  <u>Alvidres-Reyes</u>, 180 F.3d at 206.