# United States Court of Appeals
## For the First Circuit

No. 01-1616

ALI RUCKBI,

Plaintiff, Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Cyr, Senior Circuit Judge.

Linda A. Cristello, with whom Allan M. Tow was on brief for appellant.
Mary Jane Candaux, Attorney, Office of Immigration Litigation, with whom Robert D. McCallum, Jr., Assistant Attorney General and David V. Bernal, Assistant Director, were on brief for appellees.

April 5, 2002

**CYR, <u>Senior Circuit Judge</u>.**  Ali Ruckbi, a Syrian national, appeals from the district court judgment which dismissed his habeas corpus petition for relief from a final deportation order.  We affirm.

**I**

<u>BACKGROUND</u>

Ruckbi failed to depart the United States after his visa expired in October 1992.  While residing in Massachusetts, Ruckbi admittedly committed thirty-six criminal offenses, including larceny by check and forgery, under several aliases.  The Immigration and Naturalization Service ("INS") issued an order to show cause why Ruckbi ought not be deported.  During the course of a consent search of the Ruckbi residence, INS agents seized documentary evidence relating to various crimes, including altered passports as well as identification cards issued under various aliases.

After Ruckbi conceded deportability, he applied for an adjustment of status based on his marriage to a United States citizen, <u>see</u> Immigration and Nationality Act ("INA") § 245, 8 U.S.C. § 1255(a), and, in the alternative, for leave to depart the United States voluntarily, <u>see</u> INA § 244(e), 8 U.S.C. § 1254(e) (repealed 1996).  In these applications, however, Ruckbi categorically denied having committed the crimes charged.

3

Following a series of evidentiary hearings during which Ruckbi admitted the charged offenses, the immigration judge ("IJ") rejected his section 245 and 244(e) applications. The Board of Immigration Appeals ("BIA") affirmed. Thereafter, we dismissed Ruckbi's direct appeal due to lack of appellate jurisdiction. See Ruckbi v. INS, 159 F.3d 18, 21 (1st Cir. 1998). In due course, the district court dismissed the petition for habeas corpus, see 28 U.S.C. § 2241, and Ruckbi initiated this appeal.

## II

## DISCUSSION

Ruckbi asserts three principal challenges to the fundamental fairness of the deportation proceedings.[1]

### A.   The Unannounced Discontinuance of the Final Hearing

First, Ruckbi contends that the IJ violated due process by abruptly issuing an opinion on February 22, 1995, dismissing

---

[1]In view of the fact that Ruckbi's challenges must fail under even the most favorable standard of review, see Goncalves v. Reno, 144 F.3d 110, 124-25 (1st Cir. 1998) (declining to import the more deferential standards applicable under amended §§ 2254 and 2255 for use in § 2241 habeas petitions brought in immigration cases, since in § 2241 habeas cases the district court is the first court, federal or state, to resolve disputed issues of law), we shall simply assume, without deciding, that Ruckbi's constitutional claims are to be reviewed de novo, see, e.g., Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 302 (5th Cir. 1999), but that the IJ's subsidiary factual findings may not be set aside unless clearly erroneous, see, e.g., Selgeka v. Carroll, 184 F.3d 337, 342 (4th Cir. 1999).

4

his section 245 and section 244(e) applications, notwithstanding the IJ's earlier announcement continuing the hearing until February 27.  More particularly, Ruckbi argues that the cancellation of the February 27th hearing preempted (i) his filing of (and any IJ ruling upon) a crucial application for waiver of excludability under INA § 212(h), 8 U.S.C. § 1182(h), and (ii) any cross-examination of the government's forensic expert.  These claims are without merit.

INA § 245 plainly provides that eligibility for an adjustment of status is restricted to otherwise "admissible" aliens,[2] whereas Ruckbi conceded inadmissibility, during earlier

---

[2]"Section 245 of the Act authorizes the Attorney General, in her discretion and under such regulations as she  may prescribe, to adjust an alien's status to that of an alien lawfully admitted for permanent residence, provided that the alien meets certain statutory requirements.  To be statutorily eligible for adjustment of status, the alien must show:  (1) that he was inspected and admitted or paroled into the United States; (2) that he has made an application for such adjustment; (3) that he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and, (4) that an immigrant visa is immediately available to him at the time his application is filed.  Once the alien has established threshold statutory eligibility, he must additionally demonstrate to the Attorney General's satisfaction that he merits relief in the exercise of discretion."  Ruckbi, 159 F.3d at 19 (citing Henry v. INS, 74 F.3d 1, 4, 7 (1st Cir. 1996)) (emphasis added).
In the event that his application for adjustment of status were to be denied, Ruckbi further sought a discretionary grant of voluntary departure.  "Under § 244(e) of the INA, the Attorney General may, in her discretion, permit an alien in deportation proceedings to depart voluntarily from the United States at his own expense in lieu of deportation.  To be statutorily eligible for voluntary departure, an alien must

hearings, by testifying that he had committed the crimes of "moral turpitude" with which he was charged, thereby rendering himself presumptively ineligible for any adjustment under § 245.[3] Consequently, Ruckbi could obtain an adjustment of status only after requesting and securing a separate § 212(h) waiver of excludability from the IJ.[4]  See Ruckbi, 159 F.3d at 20 n.4 ("A

---

demonstrate to the Attorney General's satisfaction that he is and has been a person of <u>good moral character</u> for at least five years immediately preceding the date of his voluntary departure application.  As with adjustment [of status], once an alien has established statutory eligibility for voluntary departure, he additionally must persuade the Attorney General that he merits a grant of relief <u>in the exercise of discretion</u>."  <u>Id.</u> at 20 (citing <u>Molina</u> v. <u>INS</u>, 981 F.2d 14, 17 (1st Cir. 1992)) (emphasis added).

[3]INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), states:  "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . <u>a crime involving moral turpitude</u> (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is <u>inadmissible</u>." (Emphasis added.)  Similarly, the IJ noted that Ruckbi's use of altered passports likely rendered him independently excludable under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), which provides:  "Any alien who, by <u>fraud</u> or <u>willfully misrepresenting a material fact</u>, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is <u>inadmissible</u>."  (Emphasis added.)

[4]INA § 212(h), 8 U.S.C. § 1182(h), provides, in pertinent part:  "The Attorney General may, in his discretion, waive the application of subparagraph[] (A)(i)(I) of . . . subsection (a)(2) of this section . . . in the case of an immigrant who is the spouse . . . of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the

6

showing of admissibility to the United States is a statutory prerequisite to adjustment-of-status relief under § 245 of the INA.") (emphasis added); see also Griffiths v. INS, 243 F.3d 45, 55 (1st Cir. 2001) (same). Ruckbi has not done so.

Moreover, even assuming Ruckbi intended to submit a § 212(h) application for waiver of excludability on February 27, 1995, the unannounced discontinuance by the IJ was harmless.[5] Regardless of the merits vel non of any § 212(h) application by Ruckbi, the IJ — after balancing all relevant factors — was empowered to deny Ruckbi's § 245 application on the alternative and independent ground that Ruckbi had not established that he was entitled to a discretionary adjustment. See, e.g., Rashtabadi v. INS, 23 F.3d 1562, 1570 (9th Cir. 1994) ("The BIA or the IJ decides whether an applicant is entitled to a favorable exercise of agency discretion [under § 245] on a case by case basis by 'taking into account the social and humane

---

United States citizen or lawfully resident spouse . . . of such alien . . . and . . . the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status."

[5]Since Ruckbi's claim cannot survive the more rigorous "harmless error" standard applicable on direct appellate review, cf. Griffiths, 243 F.3d at 55; White v. INS, 17 F.3d 475, 479-80 (1st Cir. 1994), we need not determine to what extent, if any, the normally less advantageous habeas corpus standard further undermines the present claim.

7

considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident.'  Where an alien has committed a particularly grave criminal offense, he may be required to make a heightened showing that his case presents unusual or outstanding equities.")(citations omitted); see also supra note 2.

The IJ's decision clearly reflects that the § 245 application submitted by Ruckbi was rejected on just such alternative and independent grounds:

> First, this court must deny the respondent's request for adjustment of status pursuant to section 245(a) . . . because he has not established that he merits an exercise of discretion in his favor . . . . Furthermore, the respondent is excludible under section 212(a)(2)(A)(i)(I) . . . [b]ecause he has not filed for a waiver of excludibility pursuant to section 212(h)(1)(B) . . . .

8

(Emphasis added.)[6]  Thus, there can be no doubt whatsoever that the IJ would have reached the identical decision even assuming that Ruckbi applied for a § 212(h) waiver on February 27.

Second, the contention that the discontinuance of the February 27 hearing prevented Ruckbi from "cross-examining" the government's forensic expert is meritless as well.  The government previously introduced a forensic laboratory report which concluded that the two passports seized during the search of the Ruckbi apartment had been altered.  Neither on appeal nor before either the IJ or the BIA has Ruckbi identified the proposed scope or subject matter of the "cross-examination" sought.  Furthermore, the government offered the laboratory report for the sole purpose of establishing that the passports had been altered (a fact readily conceded by Ruckbi's counsel),

---

[6]In light of the clear evidence and explicit finding that Ruckbi gave false testimony before the IJ, he has not argued on appeal that the IJ abused his discretion in declining to grant relief under §§ 245 and 244(c).  Hence, we need not reach the question whether the district court would have subject matter jurisdiction over such a habeas claim. See Goncalves, 144 F.3d at 125 (noting that following enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, courts of appeals retain jurisdiction to hear appeals relating to certain types of habeas claims, such as those involving pure questions of law, but reserving the question as to whether this jurisdictional grant extends to "'the manner in which [agency] discretion was exercised'") (citation omitted).  But cf. Calcano-Martinez v. INS, 533 U.S. 348, 121 S. Ct. 2268, 2270 n.2 (2001) (noting that "[t]he scope of [the IIRIRA jurisdictional] preclusion is not entirely clear").

rather than to prove that Ruckbi himself had made the alterations. Nor did the IJ predicate his decision on any such finding.[7]

## B.   Notice of the Right to Apply for the Section 212(h) Waiver of Excludability

Ruckbi next contends that the IJ's failure to advise him of the right to submit a § 212(h) waiver application, as required by INS regulations, see 8 C.F.R. § 242.17(a), warrants reversal of the IJ's decision. This argument must be rejected as well, since the failure to submit a § 212(h) waiver was utterly harmless. See supra. Consequently, Ruckbi could not have been prejudiced by the IJ's failure to advise him of the right to submit a waiver application.[8]

## C.   Admissibility of the Fruits of the October 1993 Search

Finally, Ruckbi contends that since he testified that he did not sign the consent-to-search form until after the INS agents completed their search and, even then, only as a

---

[7]Similarly, Ruckbi is mistaken to the extent he contends that the government was required to call the forensic expert, who prepared the report, as a trial witness. See, e.g., Espinoza v. INS, 45 F.3d 308, 310 (9th Cir. 1995).

[8]We note, nonetheless, that Ruckbi had actual notice of this right under § 242.17(a). At the May 12, 1994, hearing, Ruckbi's counsel acquiesced when the IJ observed that, in light of the admissions Ruckbi made regarding his past criminal conduct, Ruckbi would need to obtain a § 212(h) waiver before any § 245 adjustment of status could be considered.

10

condition precedent to his release from government custody, the IJ violated his Fourth Amendment right to be free from unreasonable search and seizure by rejecting his section 245 and section 244(c) applications. He argues that the IJ failed to undertake the requisite inquiries into the timeliness and voluntariness of his consent notwithstanding this undisputed evidence. See Schneckloth v. Bustamonte, 412 U.S. 218, 223 (1973). Once again we must disagree.

First, the exclusionary rule based in the Fourth Amendment normally does not apply in deportation proceedings. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1042-43 (1984). Nevertheless, INS regulations do contemplate the suppression of illegally seized evidence in cases involving "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." Id. at 1050-51 & n.5 (citing Matter of Toro, 17 I. & N. Dec. 340, 343 (BIA 1980)); see also Velasquez-Tabir v. INS, 127 F.3d 456, 459-60 (5th Cir. 1997). However, Ruckbi neither moved to suppress the evidence seized in the search, nor lodged a contemporaneous objection at the time the government proposed to introduce the seized evidence at the hearing before the IJ. Cf., e.g., Gonzalez-Rivera v. INS, 22 F.3d 1441, 1443 (9th Cir. 1994) (noting that

11

appellant may submit pre-deportation-hearing motion to suppress evidence seized in search); cf. also United States v. Santos Batista, 239 F.3d 16, 19-20 (1st Cir. 2001) (criminal defendant's failure to file pretrial suppression motion normally constitutes waiver of Fourth Amendment challenge). Consequently, neither the validity of Ruckbi's overt consent to the search, nor the alleged egregiousness of the search itself was ever placed squarely at issue.

Further, assuming arguendo that the consent issue was adequately presented simply through Ruckbi's testimony that his consent had been untimely and the result of coercion, the record does not support the contention that Ruckbi's testimony was undisputed. Instead, the IJ specifically found that Ruckbi was not a credible witness in any respect, particularly in light of the many instances in which he abruptly and unconvincingly altered his testimony in mid-course. See Selgeka v. Carroll, 184 F.3d 337, 343 (4th Cir. 1999) (findings of fact reviewed only for clear error). For instance, Ruckbi initially and repeatedly denied that he had ever consented to the search. Yet when government counsel confronted him with Exhibit 23, the consent form, Ruckbi acknowledged that he had indeed signed it. Given the numerous other testimonial misrepresentations by Ruckbi, the IJ reasonably could conclude that the belated Fourth

12

Amendment challenge was not only groundless, but fabricated. See <u>Lopez-Mendoza</u>, 468 U.S. at 1039 ("A decision of deportability need be based only on 'reasonable, substantial and probative evidence.'") (citation omitted).[9]

**<u>Affirmed</u>.**

---

[9]The remaining arguments made by Ruckbi on appeal are utterly meritless, hence warrant no separate discussion.