**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-60801

GENEVA C. HAYNES, As Administratrix of the Estate of Charles
Haynes, Jr. Deceased,

Plaintiff-Appellant,

versus

PRUDENTIAL HEALTH CARE, MEMBER-AETNA US HEALTHCARE,
"PRUCARE", a Kentucky corporation or association
contracting with SLS Incorporated, for the provision of
Medical insurance and health care services,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

December 9, 2002

Before DeMOSS, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Geneva C. Haynes, Administratrix of the Estate of Charles Haynes, Jr. ("Haynes"), appeals

from the district court's FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) dismissal in favor of

Prudential Health Care Plan, Inc. ("PruCare"). The issue raised on appeal is whether the district court

erred in dismissing Haynes's negligence claims as preempted under the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). For the following reasons, we hold that Haynes's negligence claims are expressly preempted under ERISA § 514(a) because PruCare's determination was administrative. See 29 U.S.C. § 1144(a) (hereinafter, citations are to sections of ERISA).

FACTUAL AND PROCEDURAL BACKGROUND

Haynes was an insulin-dependent adult diabetic. Before becoming a member of the PruCare Health Maintenance Organization ("HMO") in January 1999, he had been under long-term care and treatment by Dr. John Norwood for his diabetes and related circulatory conditions. Haynes continued to be treated by Dr. Norwood after joining the plan without protest from PruCare. Indeed, up until October 1999, PruCare allowed Dr. Norwood to administer medical treatment to Haynes as his primary care physician ("PCP") under the program. Haynes explained that this led him to believe that Dr. Norwood was a PruCare PCP under the plan.

In late October 1999, Haynes began to suffer painful swelling in his right foot and lower right leg, and developed an abscess beneath the skin of the underside of his right foot. Haynes visited Dr. Norwood for treatment of the condition on October 27, 1999 and was directed by him to go immediately to the Methodist Hospital Wound Care Center in Memphis ("Wound Care Center"). In response, Dr. Norwood's staff attempted to make an appointment for Haynes at the Wound Care Center but was informed that PruCare would not permit Haynes to receive treatment there. On that same day, PruCare informed Haynes that Dr. Norwood was not a PruCare PCP, and therefore, Haynes was precluded from visiting the Wound Care Center until he could secure a referral from a PruCare PCP.

2

By the first of November, Haynes's foot and leg continued to swell as infection spread. A member of Dr. Norwood's staff, a representative from PruCare, and Haynes conversed regarding Dr. Norwood's status as a PCP. PruCare maintained that it did not consider Dr. Norwood a PCP and gave Haynes the telephone numbers of three PCPs. Despite Dr. Norwood's recommendations, PruCare continued to refuse to permit Haynes to receive treatment at the Wound Care Center, unless one of the PruCare-approved PCPs made the referral. Between November 1 and November 3, 1999, Haynes alleges that he and Dr. Norwood's staff called the three numbers that PruCare had given them. One of the numbers was disconnected, calls to the second only reached the answering machine, and the third never returned his calls.

By November 3, 1999, Haynes's leg swelled to such an extent that his toes burst open, draining blood, puss, and other fluids. Haynes called 911 and was taken to the emergency room at Baptist Central Hospital in Memphis. Once there, he was assigned to a PruCare PCP, Dr. Robert Kulinski. Though Dr. Kulinski attempted to save his leg by administering antibiotics and other treatment, on November 4, 1999, he recommended an immediate amputation of Haynes's right foot and lower right leg. After Haynes received a second concurring opinion, his leg was amputated on November 12, 1999. Apparently, Dr. Kulinski told Haynes that his leg could have been saved if Haynes had received timely treatment from the Wound Care Center. Haynes was unable to work after the amputation and died in April 2001 from unrelated causes.

Haynes brought suit (prior to his death) in the Northern District of Mississippi based on diversity jurisdiction pursuant to 42 U.S.C. § 1332 and ground his claims on negligence principles and estoppel. He alleged, *inter alia*, that PruCare created an environment which encouraged and perpetuated negligent conduct; failed to ensure that Haynes received necessary care; failed to provide

adequately trained health care providers to treat Haynes's conditions; and failed to properly medically manage Haynes's condition. PruCare moved to dismiss pursuant to FED.R.CIV.P. 12(b)(6) contending that such claims are expressly preempted under ERISA. The district court granted PruCare's motion to dismiss. This appeal followed.

## STANDARD OF REVIEW

The district court's dismissal of a claim under FED.R.CIV.P. 12(b)(6) is reviewed *de novo*. Vulcan Materials Co. v. Tehuacana, 238 F.3d 382, 387 (5th Cir. 2001). "The complaint must be liberally construed in favor of the plaintiff, and all the facts pleaded in the complaint must be taken as true" to determine whether the plaintiff has stated a valid claim for relief. Brown v. Nationsbank Corp., 188 F.3d 579, 586 (5th Cir. 1999). The dismissal will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." U.S. ex rel Thompson v. Columbia HCA/Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

## DISCUSSION

There are two types of ERISA preemption: complete and express preemption. In general, complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987). Whether state law negligence claims are completely preempted by § 502(a) primarily answers questions of jurisdiction. Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 336 (5th Cir. 1999). As this Circuit has stated, section 502(a) "functions as an exception to the well-pleaded complaint rule; 'Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking

the same relief, regardless of how artfully pleaded as a state action." (quoting <u>Metropolitan Life Ins.</u> <u>Co.</u>, 481 U.S. at 64-65)). <u>Id</u>. "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) ... governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." <u>Pryzbowski v. U.S. Healthcare</u> <u>Inc.</u>, 245 F.3d 266, 277 (3rd Cir. 2001) (internal quotations omitted)). In this case, diversity confers subject matter jurisdiction therefore, there are no questions of jurisdiction to invoke an analysis of complete preemption on these facts consistent with § 502(a).

Express preemption is applicable to this case. Express preemption exists when a state law or claim "relates to" ERISA plans unless it "regulates insurance" under § 514(a). <u>Pilot Life Ins. Co. v.</u> <u>Dedeaux</u>, 481 U.S. 41, 45 (1987). In pertinent parts, the statute reads:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supercede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan described in §4(a) and not exempt under §4(b).

ERISA § 514(a) (emphasis added). This preemption provision contains a savings clause in subsection (b) which states that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which *regulates insurance*, banking, or securities."

ERISA § 514(b)(2)(A) (emphasis added).

In short, this lawsuit "relates to" an employee benefit plan provided to Haynes through his employer under § 514(a) and is a common law tort claim which does not specifically "regulate insurance" so as to save the lawsuit from preemption under § 514(b). The limiting language of the express preemption provision requires that the lawsuit only "relate to" an administrative decision of the HMO to be preempted by ERISA. <u>New York State Conference of Blue Cross & Blue Shield</u> <u>Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 661 (1995). Under this scheme, if PruCare made a medical

necessity decision, for example, Haynes's common law tort claim may not be preempted, and therefore, falls under state law. If PruCare made a purely administrative decision, Haynes's state law tort claim is preempted under § 514(a) and is regulated by ERISA. Id. To determine whether the district court erred in granting PruCare's 12(b)(6) motion to dismiss, we must determine whether the lawsuit relates to an administrative decision. At the core of our analysis is whether PruCare's determination that Dr. Norwood was not a PCP under the plan and therefore did not authorize Dr. Norwood's referral to the Wound Care Center was an administrative or a mixed determination. See Pegram v. Herdrich, 530 U.S. 211, 228 (2000).

I. The Law

The Supreme Court continues to grapple with the precise scope of the express preemption provisions of ERISA under § 514. See Rush Prudential HMO Inc. v. Moran, __ U.S. __; 122 S. Ct. 2151, 2158 (2002) ("The 'unhelpful' drafting of these clauses occupies a substantial share of this Court's time."). Haynes argues that Travelers Ins. Co., 514 U.S. 645 (1995) and Pegram, 530 U.S. 211 (2000) together, stand for the proposition that decisions that are both administrative and medical by nature are not expressly preempted under ERISA. Haynes contends that Pegram further clarifies the scope of express preemption as defined in Travelers Ins. Co. so as to further restrict the preemptive reach of ERISA.. In this case, PruCare made a purely administrative decision. Thus, we need not reach the specific question of whether Pegram narrows the scope of express preemption. We simply apply the rationale provided in Travelers Ins. Co. and Pegram to determine whether PruCare made an administrative decision.

In Travelers Ins. Co., the Supreme Court held that a state statute requiring surcharges on hospital rates for patients with commercial health plans but not from certain HMOs did not "relate

6

to" ERISA plans because the statute had only indirect economic effects. 514 U.S. at 668. The Court started with the "presumption that Congress [did] not intend to supplant state law ... in fields of traditional state regulation." Id. at 654-55.  Upon a review of the text of § 514, the Court explained that the language of "relate to" appears expansive, but taking an expansive approach would be "to read the presumption against pre-emption out of the law." Id. at 655. As such, the Court narrowed the scope of express preemption of state laws by determining that only those state laws that "relate to" the administration or benefit structure are preempted. Id. at 658. Many of the decisions of the Court after Travelers Ins. Co. similarly held that the challenged state statutes were not preempted because they were laws of general application and were neither directed to ERISA plans nor interfered with their administration. See Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 277-78 (3d Cir. 2001) (summarizing Supreme Court cases after Travelers Ins. Co.). Travelers Ins. Co. narrowed the scope of express preemption only to those state laws that have an effect on the administration of the plan or benefit structure. Id.

In Pegram, the Court examined the effect on the administration or benefit structure of an insurance plan when a physician delays treatment to satisfy the incentive program provided by the HMO. In Pegram, Herdrich was covered by an HMO through her husband's employer. Id. at 215. Herdrich went to Dr. Pegram, her PCP, complaining of abdominal pains. Id. Dr. Pegram required Herdrich to wait eight days for an ultrasound, apparently, as part of a scheme in the HMO that rewarded physicians for limiting care. Id. at 215-16. During this eight day waiting period, Herdrich's appendix ruptured, causing peritonitis. Id. at 215. Herdrich sued the HMO under ERISA § 409(a) which imposes liability for breach of fiduciary duty. Id. at 216-17. Echoing the language of Travelers Ins. Co., the Pegram Court reiterated that there are two types of acts that HMOs perform: 1) pure

7

eligibility decisions which turn on the plan's coverage of a particular condition or medical procedure for its treatment; and 2) "treatment decisions" which concern diagnosing or treating a patient condition. Id. at 227-28. The Court then extended the analysis in Travelers and explained that often these two decisions are intextricably mixed, and that Congress did not intend "the category of fiduciary administrative functions to encompass the mixed determinations at issue." Id. at 232. In sum, the Court pushed the door ajar to treat mixed eligibility and treatment decisions as medical decisions for the purposes of ERISA, but it did not sanction the blanket application of mixed eligibility decision in all ERISA preemption cases.

Haynes urges this Court to extend the holding in Pegram to apply to all ERISA preemption claims and conclude that a mixed decision is not a preemptive decision. As we have already explained, "we do not read Pegram to entail that every conceivable state law claim survives preemption so long as it is based on a mixed question of eligibility and treatment." Corporate Health Ins. Co. v. Texas Dpt. of Ins., 220 F.3d 641, 643 (5th Cir. 2000). We decline to make such an inference here. Although the Supreme Court recently "recall[ed] that regulating insurance tied to what is medically necessary is probably inseparable from enforcing the quintessentially state-law standards of reasonable medical care," Rush, __ U.S. at __;122 S. Ct. at 2171 (2002), it merely noted "the potential for conflict when an HMO makes decisions about appropriate treatment." Id. at 2169 n.15. The Supreme Court has yet to address whether, in all cases, mixed decisions are to be treated as medical decisions for the purposes of ERISA. See id. The threshold question, therefore, remains whether PruCare's decision that Dr. Norwood was not a PCP under the plan, and therefore, was not authorized to refer Haynes to the Wound Care Center, was purely administrative. We conclude that it was.

II. Application

In Pryzbowski, 245 F.3d 266 (3rd Cir. 2001), the Third Circuit was faced with a similar situation. Id. at 268-70. Pryzbowski had undergone back surgery by Dr. Barolet before receiving benefits from a new HMO through her husband's employer. Id. After her back surgery, she was being treated by her PCP, a member of Medemerge which is a consortium of participating physicians within the HMO, for severe back pain. Id. Her physician concluded that her back pain stemmed from her prior surgery and recommended that she seek corrective surgery by Dr. Barolet who was outside of the network of participating HMO surgeons. Id. Her HMO required prior approval to seek medical treatment from a non-HMO physician. Id. A month after her initial diagnosis, the HMO approved surgery by Dr. Barolet. Id. Dr. Barolet examined Pryzbowski and agreed that surgery was necessary but required consultation with a series of physicians who were also outside of the HMO network before performing the necessary surgery. Id. Like Dr. Norwood in Haynes's situation, Dr. Barolet, the recommending surgeon, was outside of the network of physicians. Id. Pryzbowski again sought prior approval from the HMO through Medemerge. Id. A few months later, after ongoing communication between Dr. Barolet, Pryzbowski, Medemerge, and the HMO, the HMO approved the consultations. Id. As a result, Pryzbowski's surgery was delayed several months after the initial recommendation of her participating PCP to undergo corrective surgery by Dr. Barolet. Id. After Dr. Barolet performed the back surgery, Pryzbowski continued to experience severe back pain. Id. Dr. Barolet opined that had he been allowed to perform the surgery earlier, Pryzbowski would not have continued to experience back pain after the surgery. Id.

Similar to Haynes's negligence claims, Pryzbowski filed a complaint against the HMO and Medemerge alleging, *inter alia*, that they negligently and carelessly delayed approval for the surgery, causing Pryzbowski's continued back pain. Id. Pryzbowski is instructive only in that the Third Circuit

9

characterized the HMO's actions as administrative in nature given a substantially similar factual situation. 245 F.3d at 274. As part of its analysis of whether Pryzbowski's claims against the HMO were completely preempted, the Third Circuit extended Pegram to the context of complete preemption under § 502(a) and concluded that Pryzbowsi's claims against the HMO are "limited to its delay in approving benefits, conduct falling squarely within the administrative function." Id. at 274. The HMO removed the case to federal court where the district court dismissed the claims against the HMO as completely preempted under § 502(a). The Third Circuit upheld the dismissal under § 502(a).[1]

Similarly, we read Haynes's negligence claim to assert that PruCare's determination that Dr. Norwood is not a PCP, thereby delaying authorization for treatment from the Wound Care Center, caused his subsequent injuries. Although the Third Circuit assessed Pryzbowski's claim under complete preemption, whereas here, PruCare asserts express preemption, we agree that for the purposes of ERISA preemption, such a decision "fall[s] squarely within the administrative function," and therefore conclude that Haynes's negligence claim is expressly preempted under § 514(a).

We are persuaded by the factual similarities between this case and the situation presented in Pryzbowski and similarly conclude that PruCare's decision effected the administration of the benefit structure of the plan. There is no evidence in the record that Dr. Norwood was a PCP under the

---

[1]The district court also granted summary judgment to Medemerge based on express preemption under § 514(a). The Third Circuit reversed and held that the claims against Medemerge were not expressly preempted under § 514(a). Id. at 270-280. However, unlike the present case, Medemerge was not an HMO, but rather a PCP under the plan. The Third Circuit noted that in cases like Corcoran, typically, "suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)." Pryzbowski, 245 F.3d at 278. The Court's decision turned on the fact that Medemerge was not an HMO, and therefore, Pryzbowski's lawsuit was not a typical claim against an insurance company. based on a denial of benefits. Id. at 280.

PruCare plan. It was within PruCare's purview to make the administrative determination that Dr. Norwood was not in fact a participant in the HMO. Even if PruCare's administrative decision *may* have had an indirect impact on Haynes's treatment, it did not *involve* a medical decision, and therefore is expressly preempted by ERISA. On a substantially different set of facts, the Supreme Court in <u>Travelers Ins. Co.</u> resolved that even though medical decisions yield indirect economic effects that is not enough to trigger ERISA preemption. 514 U.S. at 659. Although by nature administrative determinations impact medical decisions, they are expressly preempted under ERISA. <u>Id.</u> Accordingly, Haynes's claims are expressly preempted as benefit determinations consistent with ERISA § 514(a).

CONCLUSION

Though the end result of Haynes losing part of his leg is tragic, his claim is based solely on the administration of his health benefits. A review of recent Supreme Court jurisprudence reflects that such a claim is expressly preempted by ERISA. For the foregoing reasons we AFFIRM the district court's dismissal.

AFFIRM.