United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 1, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 04-20349

———————————

CHARLES ATTEBERRY SR, ET AL

                    Plaintiffs

   v.

MEMORIAL-HERMANN HEALTHCARE SYSTEMS, On Behalf and for the
Benefit of The Estates, Heirs, Devisees, Legatees, Spouses,
Children and/or Parents of Charles Atteberry Jr.

                    Plaintiffs - Appellees

   v.

MEMORIAL-HERMANN HEALTHCARE SYSTEM; MEMORIAL-HERMANN HOSPITAL
SYSTEM

                    Plaintiffs - Appellants - Appellees

   v.

BEN ETHRIDGE

                    Intervenor - Plaintiff - Appellee

   v.

DALINDA SHELTON; CAROL ANN PITTMAN, also known as Carol Ann
Peterson, Independent Executrix of the Estate of John Linwood
Pittman, Jr., Deceased and Individually as Beneficiary of John
Linwood Pittman, Jr.

                    Intervenor - Plaintiffs - Appellants

   v.

EUROCOPTER DEUTSCHLAND, GMBH, ET AL

                    Defendants

--------------------
Appeals from the United States District Court
for the Southern District of Texas
--------------------

Before GARWOOD, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

## I. INTRODUCTION

This action arises from the crash of a Life Flight

helicopter owned and operated by Memorial-Hermann Healthcare

System and Memorial-Hermann Hospital System (collectively

"MHHS").  All three MHHS employees aboard the helicopter – Charles Atteberry, Jr., John Pittman, Jr., and Silvia Lynn Ethridge – perished in the crash.  At the time of their deaths, the employees were covered by MHHS' ERISA Occupational Benefits Plan (the "Occupational Benefits Plan") which essentially provided death benefits of $1,000,000 to the estate of the deceased employee or, in the absence of a will, to the employee's heirs at law.

This appeal involves the claims of three separate appellants, Dalinda Shelton ("Shelton"), MHHS, and Carol Pittman ("Pittman").  Each of the disputes centers on the scope and extent of MHHS' claimed subrogation rights following the payment of death benefits pursuant to MHHS' Occupational Benefits Plan.  More specifically, Shelton appeals the district court's grant of summary judgment against her and its conclusion that MHHS' subrogation right gives MHHS the right to control the prosecution and settlement of the claims of the Estate of Silvia Lynn Ethridge (the "Ethridge Estate").  MHHS appeals the district court's denial of its motion for summary judgment with respect to Ben Ethridge and its conclusion that MHHS is not subrogated to Ben Ethridge's wrongful death claim arising from the death of his daughter Silvia Ethridge.  Pittman appeals the district court's grant of partial summary judgment against her – as well as its subsequent denial of her motion for partial summary judgment against MHHS – and its conclusion that MHHS is subrogated to her

claims, both as an individual and as the independent executrix of the Estate of John Linwood Pittman, Jr. (the "Pittman Estate").

Having reviewed the record and considered the briefs and arguments on appeal, we uphold the district court's grant of summary judgment against Shelton and its denial of MHHS' motion for summary judgment with respect to Ben Ethridge.  However, we reverse the district court's grant of summary judgment against Pittman in her individual capacity.

## II. STANDARD OF REVIEW

The parties agree that MHHS' ERISA Occupational Benefits Plan Administrative Committee (the "Administrative Committee") had discretionary and final authority to interpret MHHS' Occupational Benefits Plan and make all necessary factual findings.  When a plan administrator has such discretionary authority, this Court applies an abuse of discretion standard. *Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468, 471 (5th Cir. 1995).  This Court reviews *de novo* the district court's holdings regarding whether a plan administrator has abused its discretion. *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

## III. DISCUSSION

### A. Dalinda Shelton and Ben Ethridge

#### 1. Factual and procedural history

On December 23, 1999, MHHS paid a death benefit under its Occupational Benefits Plan in the amount of $1,050,816 to the

Ethridge Estate through Dalinda Shelton; Shelton is Silvia Ethridge's same-sex domestic partner, the personal representative and independent executrix of the Ethridge Estate, and the principal beneficiary under Silvia Ethridge's will. Payment of the death benefit to the estate representative is consistent with Article 8.2 of MHHS' Occupational Benefits Plan which states that "[i]n the event of the Death of an Eligible Employee, any Death Benefits payable hereunder shall be paid to the personal representative of the estate of the deceased Eligible Employee after the Administrative Committee receives appropriate directions."

At the time the death benefit was paid, Shelton and the Occupational Benefits Plan Administrator for MHHS entered into an Acknowledgment of Receipt of Benefits, Subrogation Rights and Confidentiality Agreement (the "Agreement"). As part of the Agreement, Shelton recognized that she received funds from MHHS' Occupational Benefits Plan and acknowledged that MHHS was subrogated to the Ethridge Estate's claims and causes of action. The Administrative Committee subsequently determined that MHHS' subrogation rights gave it the right to pursue and settle the Ethridge Estate's claims without the participation of Shelton as the Ethridge Estate representative.

Ben Ethridge, for his part, denies receiving Occupational Benefits Plan death benefits. In his deposition testimony, Ben Ethridge acknowledged receipt of a share of the Occupational

Benefits Plan death benefit, but stated that he received that money not from the Occupational Benefits Plan, but as a gift from Shelton. Although Ben Ethridge did not receive Occupational Benefits Plan death benefits, he did receive other insurance proceeds resulting from his daughter's death; those proceeds were paid to him through separate insurance policies that are different from the Occupational Benefits Plan that is at the heart of the instant dispute. Specifically, Ben Ethridge received life insurance and accidental death and dismemberment insurance proceeds pursuant to a Beneficiary Designation Form, on which Silvia Ethridge designated both Ben Ethridge and Dalinda Shelton as her designated beneficiaries. At oral argument, it was conceded by MHHS that while the Beneficiary Designation Form determined how the life insurance and accidental death and dismemberment insurance proceeds were to be paid out in the event of Silvia Ethridge's death, it did not set forth how the death benefit under MHHS' Occupational Benefits Plan was to be disbursed.

The Administrative Committee determined that the Beneficiary Designation Form governed the disbursement of the death benefit under MHHS' Occupational Benefits Plan and that Ben Ethridge was a designated beneficiary who received Occupational Benefits Plan monies, albeit indirectly from Shelton. The Administrative Committee concluded that because Ben Ethridge was a beneficiary of Occupational Benefits Plan death benefits, his wrongful death

cause of action was subrogated to MHHS, which could then sue third parties on Ben Ethridge's behalf.

MHHS filed suit against the third-party helicopter manufacturer on behalf of, *inter alios*, Ben Ethridge and the Ethridge Estate. The district court subsequently permitted Shelton and Ben Ethridge to intervene in the action. Shelton claimed that as executrix of the Ethridge Estate, she had the right to control the prosecution and settlement of Silvia Ethridge's survival action. Ben Ethridge contended that his wrongful death cause of action was not subrogated to MHHS because he was not a recipient of Occupational Benefits Plan death benefits and that, therefore, MHHS could not sue the helicopter manufacturer on his behalf.

MHHS moved for summary judgment against Shelton, as executrix and beneficiary, and against Ben Ethridge. The district court granted MHHS' motion for summary judgment with respect to Shelton and concluded that MHHS, as subrogee, has the authority to prosecute and settle the claims of the Ethridge Estate without the consent or participation of the Ethridge Estate representative. The district court denied MHHS' motion for summary judgment with respect to Ben Ethridge and concluded that Ben Ethridge's claims were not subrogated to MHHS because he had not received Occupational Benefits Plan death benefits. Shelton and MHHS subsequently appealed the judgment of the district court.

### 2. Shelton's claims

Because it is undisputed that MHHS is subrogated to the Ethridge Estate's causes of action, the sole issue of contention between Shelton and MHHS is the meaning of the term "subrogation" as used in the Occupational Benefits Plan.  Shelton contends that the Administrative Committee's interpretation of the meaning of subrogation amounts to an abuse of discretion because MHHS' subrogation rights do not allow MHHS the right to exclusively control the Ethridge Estate's causes of action without the consent or participation of the Ethridge Estate representative.

We conclude that the Administrative Committee's interpretation of the meaning of subrogation is legally correct under both an ordinary meaning analysis and the three-part test this Court employs to determine the legal correctness of an ERISA plan administrative committee's determination.

### a. Ordinary meaning analysis

Subrogation is not defined in the Occupational Benefits Plan and its meaning cannot be unambiguously discerned from the Occupational Benefits Plan language.  However, as it is ordinarily understood, "subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights." Black's Law Dictionary 1468 (8th ed. 2004).  Put differently, "[i]n a subrogation action, it is well established that there is only one cause of action for the insured's injuries . . . . [and

t]he insurer can assert its subrogation claim independently of the insured." *Prudential Prop. and Cas. Co. v. Dow Chevrolet-Olds, Inc.*, 10 S.W. 3d 97, 100 (Tex. App. Texarkana 1999). Moreover, under Texas state law, "[t]he subrogees stand in the shoes of the one whose rights they claim." *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W. 2d 142, 145 (Tex. App. Houston 1991). Therefore, if there is only one cause of action for an insured's injuries, and in a subrogated action that cause of action belongs to the insurance company subrogee, it follows that the insurance company subrogee has the right to control the subrogated cause of action.

As applied to the instant case, the Ethridge Estate has a cause of action on behalf of Silvia Ethridge. However, under the clear terms of the Occupational Benefits Plan, by accepting Occupational Benefits Plan death benefits, the Ethridge Estate has subrogated its cause of action to MHHS, which then stands in the shoes of the Ethridge Estate. Because there is only one cause of action, and MHHS received from the Ethridge Estate the right to control that cause of action, as the party in control MHHS is entitled to prosecute and settle the Ethridge Estate's claims without seeking approval from the Ethridge Estate representative.

### b. Legally correct interpretation

Moreover, the Administrative Committee gave the meaning of subrogation in the Occupational Benefits Plan a legally correct

interpretation under the three-part test employed by this Court to determine the legal correctness of an ERISA administrative committee's determination. *Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468, 471 (5th Cir. 1995). Under the three-part test, this Court considers: (1) whether the administrative committee has given the plan a uniform construction; (2) whether the administrative committee's interpretation is consistent with a fair reading of the plan; and (3) whether different interpretations of the plan will result in unanticipated costs. *Id.*

Regarding the first factor, when there is no evidence in the record as to whether an administrative committee has given the plan a uniform construction, this Court should proceed to the other two factors. *See id.* Because there is no evidence in the record that the Administrative Committee previously had to construe the scope of the Occupational Benefits Plan's subrogation rights, our analysis necessarily turns to the remaining two factors.

Regarding the second factor, the Administrative Committee's interpretation of the term "subrogation" is consistent with a fair reading of the Occupational Benefits Plan. The Occupational Benefits Plan language limits MHHS' recovery to the extent of "any Benefit payments made under the Plan," but does not limit MHHS' right of subrogation. The Occupational Benefits Plan language, in fact, grants MHHS a broad subrogation right since it

states that MHHS "has the right to pursue any action to enforce its subrogation rights against a third party." Therefore, a plain reading of the Occupational Benefits Plan language gives MHHS the right of subrogation to all of the Ethridge Estate's claims, with MHHS' right of recovery in any action against a third party limited to the amount of the death benefit paid to the Ethridge Estate.

Regarding the third factor, a different interpretation of the Occupational Benefits Plan than the one adopted by the Administrative Committee would result in unanticipated costs to MHHS. If, as Shelton argues, MHHS should not be permitted to prosecute or settle any subrogated claims without the consent of an employee's estate as subrogor, MHHS would be at the mercy of the estate. Pursuant to Article 11.3 of the Occupational Benefits Plan, MHHS has priority over an employee's estate with respect to all funds recovered from third parties, up to the amount of benefits MHHS has paid plus the costs of recovery. If MHHS is not permitted to independently prosecute and settle the claims of an employee's estate, MHHS runs the risk that the estate – having already received funds from MHHS – will hold up settlement negotiations in the hopes of obtaining a larger recovery. An estate that has received funds from MHHS has no incentive to settle its claims for any amount that does not exceed that already paid to it by MHHS, irrespective of how reasonable the settlement offer may be. Adopting an alternate

reading of the term "subrogation" would result in unanticipated costs to MHHS, namely the increased costs of recovering from third parties. Accordingly, we conclude that the Administrative Committee has given a legally correct interpretation to the term "subrogation" as it appears in the Occupational Benefits Plan.

Therefore, for the foregoing reasons, we affirm the judgment of the district court upholding the Administrative Committee's interpretation of MHHS' subrogation rights with respect to any claims of the Ethridge Estate, and rejecting Shelton's argument that she should control or share in the control of the prosecution of any actions brought on behalf of the Ethridge Estate.

### 3. MHHS' claims

MHHS appeals the district court's denial of MHHS' motion for summary judgment and its holding that Ben Ethridge retained his wrongful death cause of action against third parties because he was not a beneficiary of MHHS' Occupational Benefits Plan death benefits. MHHS contends that the Administrative Committee's determination was not an abuse of discretion for the following reasons: (1) because Silvia Ethridge designated Ben Ethridge as a beneficiary of her Life Insurance and Accidental Death & Dismemberment Insurance Plans, Ben Ethridge also should be considered a designated beneficiary of Occupational Benefits Plan death benefits; (2) under Article 8.2 of the Occupational Benefits Plan, MHHS must pay the Occupational Benefits Plan death

benefit as the designated Occupational Benefits Plan beneficiaries request; (3) at the request of Ben Ethridge and Shelton, MHHS made the death benefit check payable to Shelton as the personal representative of the Ethridge Estate; and (4) Ben Ethridge did receive money from Shelton.

We conclude that the Administrative Committee's determination that Ben Ethridge received Occupational Benefits Plan death benefits and was therefore required to comply with the Occupational Benefits Plan's subrogation and assignment provisions is legally incorrect under the first prong of the abuse of discretion standard articulated *supra*.

MHHS has not demonstrated that Ben Ethridge was a recipient of Occupational Benefits Plan death benefits. Although Ben Ethridge did receive life insurance and accidental death and dismemberment insurance proceeds, which are not at issue in the instant case, he did not receive from MHHS any portion of the Occupational Benefits Plan death benefit, nor was he a designated beneficiary of Occupational Benefits Plan benefits. The entire amount of the death benefit was made payable to Dalinda Shelton as the personal representative of the Ethridge Estate; Ben Ethridge did not receive any money directly from MHHS' Occupational Benefits Plan. Moreover, the money Ben Ethridge did receive from Shelton was a gift to Ben Ethridge and was drawn from Shelton's own funds.

Therefore, because the Administrative Committee's

determination that Ben Ethridge received Occupational Benefits Plan death benefits is inconsistent with a fair reading of the Occupational Benefits Plan, we conclude that the Administrative Committee's determination is legally incorrect. *See Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001) (holding that it is an abuse of discretion if an administrative committee interprets a plan in a way that directly contradicts the plain meaning of the plan language). Accordingly, we agree with the decision of the district court denying MHHS' motion for summary judgment as it relates to Ben Ethridge.

## B. Carol Pittman

### 1. Factual and procedural history

Both Carol Pittman, common law wife of the deceased John Pittman, Jr., and John Pittman III and Jennifer Pittman (collectively, the "Pittman children"), the surviving children of the deceased, asserted to MHHS that the $1,000,000 death benefit under the Occupational Benefits Plan be paid to them. Unsure who it should pay, on December 21, 2000, MHHS filed a Petition in Interpleader against Pittman and the Pittman children asking that the probate court administering the Pittman Estate determine who, as between Pittman and the Pittman children, was the appropriate payee. MHHS then deposited the $1,000,000 death benefit into the court registry. The probate court subsequently issued an Agreed Final Judgment ordering that the funds be released to the "personal representative of the Estate of John Linwood Pittman,

Jr." The probate court further determined that Pittman was the duly authorized personal representative of the Pittman Estate.

After Pittman accepted the death benefit provided under the Occupational Benefits Plan, she filed a declaratory judgment action in probate court in which Pittman sought to avoid the subrogation provisions of the Occupational Benefits Plan. MHHS removed Pittman's claim to federal court and Pittman filed a motion to remand. The district court denied Pittman's motion to remand and consolidated the removed action with MHHS' action against the third-party helicopter manufacturer on behalf of, *inter alios*, Carol Pittman and the Pittman Estate.

On July 30, 2003, MHHS filed with the district court a motion for partial summary judgment against Pittman in her capacity as executrix and beneficiary of the Pittman Estate. MHHS contended that summary judgment was appropriate because the Administrative Committee concluded that Pittman had accepted death benefits under the Occupational Benefits Plan and that MHHS had a right of subrogation to the amounts paid by it plus the costs of prosecuting the claim. Pittman also filed with the district court a motion for partial summary judgment against MHHS.

The district court granted MHHS' motion for partial summary judgment and denied Pittman's motion for partial summary judgment. Pittman appeals those adverse judgments against her.

2. Pittman's claims

Pittman concedes that the claims of the Pittman Estate are subject to subrogation because the Pittman Estate received Occupational Benefits Plan death benefits from MHHS. Moreover, as the Pittman Estate's personal representative, Carol Pittman admits she accepted Occupational Benefits Plan death benefits, but did so only on behalf of her deceased husband and not on her own behalf as his wife. As such, Pittman contends that her claims as an individual are not subject to subrogation because she as an individual did not receive Occupational Benefits Plan death benefits, nor did she as an individual contractually assign her claims to MHHS by executing an Acknowledgment of Receipt of Benefits, Subrogation Rights and Confidentiality Agreement.

The Administrative Committee read the Occupational Benefits Plan language to mean that Pittman, upon receipt of Occupational Benefits Plan death benefits, subrogated all of her rights, in whatever capacity, to MHHS. We conclude that this interpretation amounts to an abuse of discretion because the Administrative Committee, in reaching its conclusion, ignored the plain language of the Occupational Benefits Plan.

Article 11.1 of the Occupational Benefits Plan states that "[i]n the event of any Benefit payments made under the Plan to or on behalf of any Employee, the Plan shall, to the extent of such payments, be subrogated to all the rights of recovery . . . of the Employee." Article 11.1 further states that by participating in the Occupational Benefits Plan, an employee also obligates the

legal representative of his estate and that "the Plan shall be fully subrogated to any recovery or right of recovery that the estate may have against any third party."  The quoted language plainly means that when an employee or his estate accepts Occupational Benefits Plan benefits, the employee or his estate must surrender to MHHS all of its rights against third parties.

As applied to the instant case, the Occupational Benefits Plan language means only that the Pittman Estate, via Pittman as the estate representative, must surrender its claims to MHHS. The language does not mean that Pittman must surrender the wrongful death claims she independently possesses as John Pittman, Jr.'s wife merely because she also served as the representative of the Pittman Estate.  Because Pittman took Occupational Benefits Plan death benefits as the Pittman Estate representative - and not in her individual capacity - she cannot be made to subrogate to MHHS the wrongful death claims she independently possesses in her individual capacity as the decedent's wife.  In other words, MHHS acquired no subrogation rights nor control of any of Pittman's individual claims. Accordingly, we reverse the judgment of the district court insofar as it granted MHHS' motion for summary judgment with respect to Pittman in her individual capacity, and remand the case to the district court for proceedings not inconsistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED and REMANDED in part.