# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 13, 2011

Lyle W. Cayce
Clerk

No. 10-40388
Summary Calendar

ARACELI MEDINA GARCIA,

Plaintiff-Appellant

v.

AMERICAN UNITED LIFE INSURANCE COMPANY,

Defendant-Appellee

Appeal from the United States District Court for the
Eastern District of Texas
(5:07-CV-63)

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

In January 2006, Salvador DeReza Garcia (Salvador) died in a car accident. At the time of his death, Salvador was covered under a group life and accidental death insurance policy (hereinafter policy) issued by American United Life Insurance Company (AUL) and subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–46. Salvador's wife, Araceli Medina Garcia (Araceli), submitted a claim under this policy following his death. AUL

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40388

denied Araceli's claim because Salvador was living illegally in the United States and made material misrepresentations regarding his identity during the application process. Subsequently, Araceli filed suit, and the district court found in AUL's favor. We AFFIRM.

## I. BACKGROUND

Tatum Excavating, Inc. and Tatum Excavating, Inc. Employee Benefit Plan (collectively, Tatum) signed a contract for a group policy for several of its employees with AUL. The policy offered life insurance coverage in the amount of $20,000 and accidental death and dismemberment coverage in the amount of $20,000 per eligible employee. A few months after Tatum entered into this agreement, Salvador signed a group enrollment form to apply for the policy (hereinafter the enrollment form). The enrollment form reflected Salvador's alleged date of birth as August 19, 1966 and purported Social Security Number (SSN) as 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, but did not designate a beneficiary. Later, Salvador completed a beneficiary designation form, naming Araceli as sole beneficiary.

On January 25, 2006, Salvador died in a traffic accident. Subsequently, Tatum sent AUL a proof of death form, notifying AUL of Salvador's death, Araceli's Mexican identification card, and Salvador's death certificate, identifying his date of birth as August 19, 1966, place of birth as Mexico City, Mexico, and SSN as 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. In order to verify eligibility, AUL requested additional documentation because, based on Salvador's place of birth, there was no indication from the documents that Tatum sent that Salvador was a United States citizen. Tatum then sent AUL another copy of Araceli's alien registration card and a copy of Salvador's I-9 form,[1] which reflected a SSN for Salvador of 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 and Alien Resident Card number of 048-931-385 with an expiration date of May 26, 2009.

---

[1] An I-9 form is a document that indicates that an individual is an alien authorized to work in the United States. *See Velasquez-Tabir v. I.N.S.*, 127 F.3d 456, 457 (5th Cir. 1997).

2

No. 10-40388

On that same day, AUL initiated an eligibility investigation, seeking verification of Salvador's alien status and the SSN. The results of the eligibility investigation indicated that the SSN (reflected on the enrollment form, I-9, death certificate, and proof of death form) did not belong to Salvador. AUL sent Araceli a letter rescinding Salvador's policy and denying Araceli's claim. Araceli appealed AUL's decision, but did not submit additional records in support of her claim. AUL then re-opened its eligibility investigation. The reinvestigation confirmed the prior results. Specifically, the investigation report stated that the Social Security Administration (SSA) records reflected that the SSN that Salvador provided on the enrollment form belonged to a woman who died in 1966 and that the SSA was not able to find any SSN matching Salvador's name. The report further stated that the Department of Homeland Security (DHS) had no information in their system that matched the information provided for Salvador. After AUL confirmed these findings, it sent Araceli another letter explaining the reasons for AUL's denial and rescission of coverage, and providing additional information supporting its decision. Shortly thereafter, Araceli filed suit under 29 U.S.C. § 1132(a).

AUL and Araceli filed cross motions for summary judgment. Accepting the report and recommendation of the magistrate judge, the district court found in AUL's favor.[2]  Araceli appealed.

---

[2] Because the district court adopted the magistrate judge's report and recommendation in full, our references to the district court also refer to the magistrate judge's report and recommendation.

No. 10-40388

## II. DISCUSSION

At issue on appeal is (1) whether ERISA preempts Texas common law governing the rescission of an insurance policy, (2) whether the district court applied the correct standard of review, and (3) whether the district court erred in determining that Salvador made a "material" misrepresentation that allowed AUL to rescind the policy and deny Araceli's claim. We conclude that federal law applies in this case and that the district court applied the correct standard of review. We further conclude that the district court did not err in concluding that Salvador made a "material" misrepresentation that justified AUL's determination.

**A.**

"We review ERISA preemption of state law claims *de novo*." *Provident Life & Acc. Ins. Co. v. Sharpless*, 364 F.3d 634, 640 (5th Cir. 2004). There are two types of ERISA preemption—complete and conflict. *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002). "Complete preemption exists when a *remedy* falls within the scope of or is in direct conflict with [ERISA], and therefore is within the jurisdiction of federal court." *Id*. (emphasis added). Conflict preemption is applicable in this case. "Under conflict preemption, ERISA preempts state laws insofar as they may now or hereafter relate to any employee benefit plan." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 (5th Cir. 2004) (citation and internal quotation marks omitted). As an exception, however, ERISA's savings clause allows state laws that regulate insurance, banking, or securities to survive ERISA preemption. *Id*.

Araceli argues that Texas law should apply in this case. She claims that ERISA does not preempt Texas law governing the rescission of an insurance policy in light of the Supreme Court's decision in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003). Thus, she claims this court should overrule its decision in *Tingle v. Pacific Mut. Ins. Co.*, 996 F.2d 105 (5th Cir.

1993) ("*Tingle II*"), where we interpreted Louisiana law and held that in a case governed by ERISA, federal common law determined whether an insurer could rescind a health insurance policy on the grounds that an insured misrepresented material facts on his application. *Id.* at 110. Araceli's argument is without merit.

Preemption is typically a defense to a party's state law claims. *Gutierrez v. Flores*, 543 F.3d 248, 252 n.5 (5th Cir. 2008). However, preemption does not apply in this case. Specifically, Araceli does not raise preemption as a defense nor does she raise any state law claims. Her only claim is the improper denial of benefits through her right to sue AUL directly under 29 U.S.C. § 1132(a) ("A civil action may be brought [by a] beneficiary . . . to enforce . . . the terms of the plan."). To the extent that she argues that state law should apply to this court's evaluation of AUL's decision to rescind Salvador's policy, the Supreme Court explained in *Howlett v. Rose*, 496 U.S. 356 (1990), that the "elements of, and the defenses to, a federal cause of action are defined by *federal law.*" *Id.* at 375 (emphasis added). Thus, because Araceli raises only federal claims, federal law governs this case and our determination, regarding whether AUL erred in rescinding Salvador's policy.

### B.

We review the district court's summary judgment *de novo*, "applying the same standards as the district court." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009). However, as a threshold matter, we must determine whether the district court applied the correct standard of review. We conclude that it did.

### 1. Whether the district court applied the correct standard of review.

If a plan gives the administrator discretion to make claim determinations, the court must apply an abuse of discretion standard in reviewing the administrator's decision. *Atteberry v. Memorial-Hermann Healthcare Sys.*, 405

No. 10-40388

F.3d 344, 347 (5th Cir. 2005).  The policy in this case demonstrates that AUL possessed the power to determine eligibility benefits for applicants, as well as any benefits owed to beneficiaries.  Specifically, the policy states: "ENTIRE CONTRACT: This policy, the enrollment forms of the individuals, the application of the Group Policyholder and any amendments made from time to time constitute the entire contract." Salvador's beneficiary designation form, an amendment to the policy designating Araceli as Salvador's beneficiary, states that "[t]he undersigned understands and agrees . . . benefits under any policy will be paid only if AUL decides in its discretion the applicant is entitled to them."  Taken together these documents indicate that the policy gives AUL discretion to make claim determinations.  Araceli's arguments to the contrary are unavailing.

Specifically, Araceli notes that the policy states the following regarding amendments:

> AMENDMENT and CHANGES: This policy may be amended by mutual agreement between the Group Policyholder and AUL but without prejudice to any valid claim incurred prior to the effective date of the amendment. No change in this policy is valid until approved by the Chief Executive Officer, President or Secretary of AUL. No agent has the authority to change this policy or waive any of its provisions.

The policy also notes:

> GROUP   POLICYHOLDER   means   the   sole proprietorship, partnership, corporation, firm, school, school district, or other instrumentality of a state or political subdivision thereof that employs Persons and that is covered under this policy as shown on the Title Page. Any references to Group Policyholder used in this policy shall included Insured Units.

Pursuant to these provisions, Araceli argues, *all* policy amendments require the

6

mutual agreement of AUL's Chief Executive Officer, President or Secretary and a representative from Tatum. She claims that the beneficiary designation form is not an amendment because it does not meet these requirements. Araceli's argument lacks merit.

To begin, her argument impermissibly ignores the text of the policy, as discussed above and, moreover, ignores the text of the beneficiary designation form. *See Sharpless*, 364 F.3d at 641 ("Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation of [a policy.] When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists."). The beneficiary designation form clearly provides: "It is understood and agreed upon receipt of this beneficiary designation by AUL at its principal office, such beneficiary designation will become effective." In other words, the beneficiary designation form explains how it becomes an amendment for purposes of the policy. Moreover, Araceli's argument, taken to its logical conclusion, would lead to the unduly burdensome and nonsensical requirement that every time an insured changes her named beneficiary this change must not only be approved by a representative from Tatum, but also AUL's Chief Executive Officer, President or Secretary.

Thus, we conclude that the beneficiary designation form is an amendment to the policy and gives AUL discretion to make claim determinations. Therefore, the district court correctly applied the abuse of discretion standard of review. *Atteberry*, 405 F.3d at 347.

## 2.   Abuse of Discretion Standard of Review

To determine whether a plan administrator has abused its discretion, we apply a two-step analysis. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). The first step is to determine whether the administrator's decision was "legally correct." *Id.* (citing *Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468,

No. 10-40388

471 (5th Cir. 1995)).  To address the question of whether the administrator's interpretation of the policy was legally correct, we consider three factors: 1) whether the administrator gave the policy a uniform construction; 2) whether the administrator's interpretation is consistent with a fair reading of the policy; and 3) whether different interpretations of the policy will result in unanticipated costs.  *Id.* (citation omitted).

If the determination was legally correct, our inquiry ends because a legally correct decision precludes any abuse of discretion.  *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).  Conversely, if the administrator's interpretation was not legally correct, we review the decision for an abuse of discretion.  *Id.*  Because we determine that the administrator's interpretation of the plan was legally correct, we do not explore whether the determination was an abuse of discretion.  *Id.*

We now turn to the merits of the case and analyze whether AUL abused its discretion when it rescinded the policy and denied Araceli's claim.

**C.**

As previously noted, to determine whether an administrator's interpretation of the policy was legally correct, we consider three factors: 1) whether the administrator gave the policy a uniform construction; 2) whether the administrator's interpretation is consistent with a fair reading of the policy; and 3) whether different interpretations of the policy will result in unanticipated costs.

Araceli does not argue that AUL did not give a uniform construction to the policy, nor is there evidence in the record to support this conclusion. Specifically, Araceli does not point to any similarly situated individuals whose claims were treated differently from her own.  *Stone*, 570 F.3d at 259.  To the contrary, as the district court noted, the record indicates that, since 2001, AUL has examined the citizenship status of its insureds and has denied benefits, on

8

No. 10-40388

multiple occasions, based entirely or in part on AUL's determination that the insured was not legally living or working in the United States. Furthermore, Araceli does not argue that different interpretations of the policy will result in unanticipated costs, and there is no evidence in the record to support this conclusion. Therefore, we base our decision on whether AUL's interpretation is consistent with a fair and reasonable reading of the policy. *James v. La. Laborers Health and Welfare Fund*, 29 F.3d 1029, 1033 (5th Cir. 1994); *see also Stone*, 570 F.3d at 258 ("The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan.").

An administrator's decision is "fair and reasonable," if the decision is supported by substantial evidence. *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 439 (5th Cir. 2007) (citation omitted). Substantial evidence is evidence that a reasonable mind might accept as sufficient to support the conclusion. *Wade v. Hewlett-Packard Dev. Co.*, 493 F.3d 533, 541 (5th Cir. 2007). We conclude that the administrator's decision was legally correct because a reasonable and fair reading of the policy indicates that Salvador made a material misrepresentation warranting rescission and denial of Araceli's claim.

As "a general rule . . . intentional misrepresentation, by the applicant for an insurance policy, of a material fact, if relied on by the insurer, is ground for rescission of the policy by giving notice that the policy is cancelled." *Apperson v. U. S. Fid. & Guar. Co.*, 318 F.2d 438, 441 (5th Cir. 1963) (citing cases from various circuits, including the Fifth Circuit, and states holding that an intentional misrepresentation cancels an insurance policy); *see also Sharpless*, 364 F.3d at 641 (explaining that, under federal common law, if an insurer wants to rescind a policy, claiming that the insured made a fraudulent misstatement, the insurer must prove that the alleged misstatement was material). It remains undisputed that Salvador provided a false SSN, and Araceli does not argue that

9

No. 10-40388

Salvador has a valid SSN or that he was legally entitled to be present and work in the United States. Araceli's primary argument is that Salvador's providing a false SSN on his application was not a material misrepresentation that could justify AUL's decision to rescind Salvador's coverage and deny Araceli's claim. We disagree.

An insured's misrepresentation is "material" if the facts that were misrepresented or omitted would have affected the insurance company's decision to issue the policy. *See Sharpless*, 364 F.3d at 641–42; *see also Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) ("[A] fact is 'material' only if its resolution would affect the outcome of the action."). For example, in *Sharpless*, the insured claimed on her policy application that "she had never had any known indication of a mental or emotional disorder, had never sought treatment for alcohol use, and had never used barbiturates." *Id.* at 641. However, it later came to light that she had attempted suicide, had taken barbiturates, and suffered from depression and alcoholism. *Id.* These statements, we determined, were "material" misstatements because the insurer's policy guidelines called "for policy administrators to take into account all relevant information about drug and alcohol use and mental impairments." *Id.* As such, the insurance company would not have issued the policy, if the company knew the relevant information. *Id.* at 641–42.

Salvador's misrepresentations were clearly material and of the type that would have prevented AUL from issuing the policy. A SSN is an integral part of the process by which a party's identity can be verified. *See generally Sherman v. U.S. Dept. of the Army*, 244 F.3d 357, 364–66 (5th Cir. 2001) (discussing the significant privacy interest an individual has in her SSN because it could be used to uncover her financial information, as well as other identity-related information). Because Salvador provided a false SSN and inhibited AUL's ability to verify his identity, he not only placed AUL at risk of severe penalties,

10

but also inhibited AUL's ability to assess the underwriting risk involved in issuing him the policy.

To begin, the Department of the Treasury's Office of Foreign Assets Control (OFAC) maintains the Specially Designated Nationals List (hereinafter the List), which includes the names of individuals designated, for example, as terrorists, drug dealers, and money launderers.[3]   Insurance companies are prohibited from engaging in transactions that in any way involve individuals on the List. *See, e.g.*, 31 C.F.R. § 595.204 (2011) ("Except as otherwise authorized, no U.S. person may deal in property or interests in property of a specially designated terrorist, including the making or receiving of any contribution of funds, goods, or services to or for the benefit of a specially designated terrorist."). Punishment for violations of this law can be substantial.  Notably, criminal penalties can reach up to $1,000,000 and 20 years of imprisonment for "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission" of certain violations.  *See* 50 U.S.C. § 1705(c); *see also* 31 C.F.R. § 595.701(a) (2011) (citing § 1705).  As AUL explained in its denial letter to Araceli, "[t]he misrepresentation respecting [Salvador's identity] and his ability to work and reside in the U.S. would not permit AUL's compliance with" federal regulations, regarding the List.  Thus, Salvador's misrepresentation made AUL vulnerable to substantial civil and criminal penalties, such as those enumerated in § 1705.  We conclude that AUL would not have issued the policy if the company knew that Salvador provided a false SSN, preventing AUL from verifying whether Salvador was on the List.

Additionally, without accurate information about a proposed insured's identity, an insurance company cannot properly assess the business risk involved in issuing a policy.  As AUL noted in its correspondence with Araceli,

---

[3] United States Department of the Treasury Specially Designated Nationals List, www.treas.gov/offices/enforcement/ofac/sdn (last visited Apr. 5, 2011).

insurance companies rely on an individual's identity, including their SSN, to obtain information used to assess the applicant's potential health risks, the financial and moral fitness of an applicant, and the likelihood that the insured would file a false claim. By relying on the false SSN that Salvador provided, AUL could not properly assess this information to accurately determine whether it would take on the business risk of insuring Salvador. Thus, we further conclude that AUL would not have issued the policy if the company knew that Salvador did not provide a valid SSN and that the company could not accurately verify his identity to assess the possible financial risks posed by insuring him.

Araceli would have this court overlook the fact that Salvador submitted a false SSN and exposed AUL to substantial liability, ostensibly to become employed by Tatum, so that Araceli may benefit from a policy for which Salvador would not otherwise have been eligible. We decline to do so and conclude that AUL was legally correct in determining that Salvador made a "material" misrepresentation that allowed AUL to rescind Salvador's policy and deny Araceli's claim for benefits.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.